AVI E. MUHTAR (SBN 260728)
**CROWN & STONE LAW, P.C.**
407 N. Maple Drive, Ground Floor
Beverly Hills, California 90210
Telephone: (844) 240-0444
amuhtar@crownandstonelaw.com

Attorneys for G & H EQUITIES, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>SUNSTONE DEVELOPMENT, LLC,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No. 8:25-bk-11049-SC<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR RETURN OF DEPOSIT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALONA HASSID AND OF DANIEL ZOHAR IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:      December 10, 2025<br>Time:     1:30 p.m.<br>Courtroom.: 5C<br>Place:     via ZoomGov |

**TO HON. SCOTT CLARKSON, UNITED STATES BANKRUPTCY JUDGE, UNITED STATES TRUSTEE, THE DEBTOR, AND ALL CREDITORS AND INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 10, 2025, at 1:30 p.m., in Courtroom C of the above-entitled court, located at 411 West Fourth Street, Santa Ana, CA 92701, G & H EQUITIES, LLC ("G & H") will and hereby does move this Court (the "Motion") for an Order (a) finding that G & H properly, timely, and in good faith gave notice of its refusal to waive the sale contingencies, including its Physical Inspection, Hazardous Substance and Conditions, and Soil Inspection contingencies, and cancelled the sale, under the terms of the agreement governing the Court-approved sale of SUNSTONE DEVELOPMENT, LLC's (the "Debtor") real property located in Dana Point, California (the "Property"); (b) directing the Debtor to expeditiously take all steps reasonably necessary to effectuate the immediate return of G & H's deposit of $450,000 (the "Deposit"); and (c) requiring the Debtor to reimburse G & H the sum of $9,515 for reasonable attorneys' fees and costs incurred to recover the Deposit, pursuant to the terms of the purchase and sale agreement.

This Motion is brought pursuant to § 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), this Court's retention of exclusive jurisdiction to interpret, enforce, and implement the Order approving the sale of the Property [Docket No. 107] and the purchase and sale agreement, and Federal Rule of Bankruptcy Procedure ("FRBP") 9013.

This Motion is based on this Motion, the accompanying Memorandum of Point and Authorities, the Declaration of Alona Hassid (the "Hassid Dec."), the Declaration of Daniel Zohar (the "Zohar Dec."), the record in this case, and such other argument and evidence as may properly be presented at any hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any written opposition to this Motion must be filed with the Court and served on all interested parties at least fourteen (14) days before the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that this notice pertains to a hearing utilizing ZoomGov and accessibility information is provided by the Court in its tentative ruling prior to this

hearing. All parties are directed to obtain such accessibility information on the Honorable Judge Scott Clarkson's posted hearing calendar which may be viewed online at https://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Dated:    November 19, 2025    CROWN & STONE LAW, P.C.

By: */s/ Avi Muhtar*
    Avi E. Muhtar, Esq.
    Attorneys for G & H Equities, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

**I.   INTRODUCTION**

This dispute should never have required motion practice. Under the court-approved purchase and sale agreement for Debtor's real estate asset, closing could occur only if the assigned buyer, G & H Equities, LLC, satisfied or waived contingencies after performing its due diligence. Here, G & H did not waive them. Instead, G & H timely gave notice, in writing, of its cancellation of the sale due to its refusal to waive any of the remaining contingencies, including the Physical Inspection, Hazardous Substance Conditions, and Soil Inspection contingencies. Once that timely notice was issued, the buyer's $450,000 deposit should have been returned forthwith. Yet the Debtor refused to return the $450,000 deposit and, in a filing it did not even serve on G & H, attempted to procure a declaration of waiver without notice—an effort this Court denied. With no waiver, the contingencies remaining unsatisfied, and timely notice of cancellation given, there is nothing left to contemplate: the purchase and sale agreement requires the immediate return of the $450,000 deposit and an award of G & H's reasonable attorneys' fees and costs.

**II.  FACTS**

On August 14, 2025, the Debtor filed its motion for order approving the sale of the Property [Docket No. 84] (the "Sale Motion") on the terms and conditions set forth in the Offer, Agreement, and Escrow Instructions for Purchase of Real Estate (the "Purchase Agreement") to the buyer. The subject property is approximately 2.6 acres of vacant land in Dana Point, California, and the parties agreed to a purchase price of $15,000,000, subject to a number of contingencies, as described in more detail, below. (*Id.*) On September 4, 2025, Galaxy Holding assigned its interest in the Purchase Agreement to G & H pursuant to that certain Assignment of Agreement Amendment which was concurrently countersigned by the Debtor. [Hassid Dec., ¶ 3, Exhibit 'B'.]

The Purchase Agreement required the buyer to remit a $450,000 deposit (the "Deposit") to escrow. [Hassid Dec., Exhibit 'A' (Purchase Agreement), Section 4.] The Purchase Agreement further provided, in limited pertinent part:

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the foregoing Motion.

**9.     Contingencies to Closing.**

9.1 **IF, BEFORE EXPIRATION OF THE APPLICABLE TIME, BUYER FAILS TO PROVIDE ESCROW HOLDER WRITTEN NOTICE OF BUYER'S DISAPPROVAL OF ANY OF BUYER'S CONTINGENCIES OR ANY OTHER MATTER THAT IS SUBJECT TO BUYER'S APPROVAL IN THIS AGREEMENT, THEN BUYER SHALL BE CONCLUSIVELY DEEMED TO HAVE SATISFIED SUCH BUYER'S CONTINGENCIES AND/OR APPROVED OF SUCH OTHER MATTERS.** [. . .] The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies:

(a)     *Physical Inspection.* Buyer has until August 28, 2025 to satisfy itself with regard to the physical aspects and size of the Property.

[. . .]

(c)     *Hazardous Substance Conditions Report.* Buyer has until August 28, 2025 to satisfy itself with regard to the environmental aspect of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A **"Hazardous Substance"** for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law. [the "Hazardous Substance Conditions Contingency"]

(d)     *Soil Inspection.* Buyer has until August 28, 2025 to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soil report that Seller may have within 10 days following the Date of Agreement. [the "Soil Contingency"]

[. . .]

9.2     The contingencies specified in subparagraphs 9.1(a) though (m) are for the benefit of, and may be waived by, Buyer, and are referred to collectively as **"Buyer Contingencies"** and individually as a **"Buyer's Contingency."** The time periods provided in subparagraph 9.1(a) through (m) by which Buyer is required to satisfy itself with respect to the Buyer's Contingencies is referred to as the "Buyer Contingency Periods." Buyer shall have the right, in Buyer's sole discretion, to extend any of the Buyer Contingency Periods identified in subparagraphs 9.1(a) through (m) for an additional period of up to 20 days by delivering written notice to Seller on or before the last day of the original Buyer Contingency Period.

[. . .]

**16.    Attorneys' Fees.**

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract, or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sough, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees shall not be computed in accordance with any court fee schedule, but shall be such as to full reimburse all attorneys' fees reasonably incurred. [the "Attorneys' Fees Provision"]

[Purchase Agreement, Sections 9, 16 (case, bold, and italics in the original).]

On August 28, 2025, G & H timely exercised its right to extend the Buyer Contingency Period (as defined in the Purchase Agreement) through September 17, 2025, pursuant to Section 9.2 of the Purchase Agreement. [Hassid Dec., ¶ 4, Exhibit 'C'; Purchase Agreement, Section 9.2.]

On September 10, 2025, G & H remitted the Deposit into escrow. [Hassid Dec., ¶ 5, Exhibit 'D'.]

On September 17, 2025, G & H advised that it was not waiving its contingencies [Hassid Dec., ¶ 6, Exhibit 'E'.] and the parties agreed to amend the Purchase Agreement so that "[t]he Buyer[']s contingencies set forth in section 9.1 of the agreement are hereby extended to September 29th, 2025." [Hassid Dec., ¶ 6, Exhibit 'E' (First Amendment to Purchase Agreement) & ¶ 8, Exhibit 'G'.] G & H's request for an extension was due to a September 16, 2025 written report from its geotechnical and environmental consultant stating that it needed an additional eight weeks to complete its studies of the Property. [Hassid Dec., ¶¶ 6, 8.] According to the report, in pertinent part, there were numerous areas of concern, including but not limited to:

1) A portion of the property "has recently been used to (sic) for truck and/or equipment storage."

2) "The site is located in a City and State-designated liquefaction hazard zone and historical high groundwater level is approximately five feet below the existing ground surface (bgs)."

3) "In order to develop design level foundation, grading and seismic design recommendations, a comprehensive geotechnical investigation and corresponding analysis is required. Additionally, since the east site was used for storage of materials and vehicle parking, it would be prudent to perform environmental sampling and testing at the site to identify potentially hazardous materials that may be present as a result of the site usage."

[Hassid Dec., Exhibit 'F'.]

G & H provided the Debtor with a copy of its expert's geotechnical and environmental report and proposal. [Hassid Dec., ¶ 6, Exhibit 'F'.] In that report, after making numerous recommendations for further studies, the expert stated that "[w]e anticipate geotechnical and environmental investigations, testing, analysis and reporting will require approximately eight weeks to complete. *Id*.

As counsel for Debtor has previously affirmed, although G & H advised that its expert needed eight weeks to complete its studies, the lender (Oakhurst) was unwilling to permit such an extension unless the buyer paid an additional fee of $631,060. [Leeds Dec. dated October 2, 2025 [Docket No. 122-1], ¶¶ 18-21.]

On September 23, 2025, this Court entered its Order approving the Sale Motion [Docket No. 107] (as amended by subsequent Order [Docket No. 118], the "Sale Order"), providing therein, *inter alia*, that (a) the Debtor may sell the Property pursuant to the terms and conditions of the Purchase Agreement; and, (b) the Court retains exclusive jurisdiction to interpret, enforce, and implement the terms and provisions of the Sale Order and the Purchase Agreement, and to resolve any disputes arising under or related to the same.

On September 29, 2025, the Debtor executed that certain second Amendment to Purchase Agreement, thereby extending the Buyer Contingency Period through October 10, 2025. [Hassid Dec., ¶ 9, Exhibit 'H'.] That extension was still less than what G & H's consultant needed to complete its study of the property, but permitted the parties to continue their discussions in an effort to address G & H's concerns.

On October 2, 2025, the Debtor filed its Motion for Further Order Re: Sale of Real Property and Continuing The Automatic Stay [Docket No. 122] (the "Waiver Motion"), therein seeking, *inter alia*, an Order finding that G & H had waived all contingencies, even though the deadline to waive contingencies had been extended to October 10, 2025. Remarkably, the Debtor failed to serve G &

4

H with the Waiver Motion. Thus, G & H was unaware of Debtor's motion until recently.

G & H thereafter repeatedly advised the Debtor that it would not waive any contingencies and that a further extension was required so that the geotechnical and environmental expert could complete their study and analysis. [Hassid Dec., ¶ 10, <u>Exhibit</u> '<u>I</u>'.] When the Debtor and the Debtor's lender refused to agree to an additional extension of time, G & H gave written notice that it was not waiving any of the remaining contingencies, was cancelling the Purchase Agreement, and asked for the Deposit to be refunded. *Id.* Specifically, on October 9, 2025, G & H's counsel, Alona Hassid ("Ms. Hassid"), wrote, "[w]e are NOT approving contingency removal." *Id.* On October 10, 2025, Ms. Hassid wrote again:

> To be clear, we ARE NOT releasing or agreeing to 100K for 3 a [sic] month extension.
>
> WE DO NOT WAIVE ANY CONTINGENCY.
>
> Please refund the deposit.

*Id.* That same day, Ms. Hassid wrote again, "I want to be clear that ***there is no waiver of contingency and we would like to receive the deposit back.***" *Id.* (emphasis in the original.) On October 10, 2025, G & H's principal likewise wrote:

> This is my written notice of Buyer's disapproval of Buyer's contingency. Buyer DOES NOT approve contingency. Please refund the deposit.

*Id.*

On October 14, 2025, the Court held a hearing on the Waiver Motion[2] and denied the motion [Docket No. 141]. It bears emphasis that, well before the hearing on the Waiver Motion, G & H had already timely provided written notice both of its refusal to waive any sale contingencies, its cancellation of the Purchase Agreement, and its demand for the return of the Deposit.

Thereafter, the parties engaged in discussions to resolve this dispute; however, the Debtor refused to return the Deposit to G & H. [Hassid Dec., ¶ 11.]. On October 22, 2025, G & H advised the Debtor that absent an immediate refund of the Deposit, G & H would seek court intervention both for the return of its Deposit and for reimbursement of attorneys' fees and costs. [Zohar Dec.,

---

[2] As stated above, G & H did not appear because G & H was not given notice of the hearing.

¶ 2, Exhibit 'A'.] Counsel for G & H made several follow up requests for the return of the deposit, but was ultimately ignored. [Zohar Dec., ¶ 3.]

### III. ARGUMENT

Courts have regularly upheld provisions that condition the closing of a land purchase on the buyer's approval of reports, such as termite, soils, engineering, and title reports. *See Miller & Starr* § 1:106. [Duty to make good-faith attempt to satisfy a condition—Condition based on approval or satisfaction (4th ed.)] Indeed, in *Larwin-Southern California, Inc. v JGB Investment Co.,* the Court of Appeal held that contracts containing satisfaction clauses are enforceable even when they grant a party the right to approve or disapprove matters in their sole judgment and discretion. *Larwin-Southern California, Inc. v. JGB Investment Co., 101 Cal.App.3d 626, 640 (1979).* The *Larwin* Court specifically addressed the use of broad discretionary language, stating that despite the provision that plaintiff had "sole judgment and discretion" in deciding whether to exercise its approval or disapproval, it was required to do so only within the parameters of the duty of good faith. *Id.*

Here, G & H had an express right not to waive the contingencies listed in Section 9 of the Purchase Agreement. Further, G & H's geotechnical and environmental consultant stated in a written report shared with the Debtor that they required an additional eight weeks to perform an assortment of necessary studies. G & H reasonably, appropriately, and in good faith relied on the advice of its expert consultant and declined to waive the Physical Inspection, Hazardous Substance Conditions, and the Soil Inspection contingencies, or any other remaining contingencies, without first having the studies completed. Despite this clear need for an extension, Debtor and/or its lender refused to grant the necessary extension short of extracting another six-figure payment from Buyer for the privilege of performing its due diligence as already agreed in the Purchase Agreement. Placed in a predicament where Buyer had to choose between ignoring its own expert's red flags or paying what was effectively a ransom payment just to have sufficient time to allow its expert to complete their due diligence, Buyer chose to not to waive contingencies and to cancel the Purchase Agreement.

As a result, at that moment, the $450,000 deposit was required to be returned to the Buyer. To date, however, such funds remain in escrow and the Debtor refuses to agree to the release of those funds. Further, Buyer has expended time and resources seeking to enforce the terms of the Purchase

Agreement, and has notified Debtor that Buyer would seek its fees and costs if forced to file this motion. The Court is respectfully requested to enforce the Purchase Agreement, order the return of the $450,000 deposit, and award G & H its attorney's fees and costs.

## IV.  CONCLUSION

WHEREFORE, for the reasons set forth herein, G & H respectfully requests that the Court grant the Motion and enter an Order:

a. finding that G & H properly, timely, and in good faith gave notice of its refusal to waive the sale contingencies, including its Physical Inspection, Hazardous Substance and Conditions, and Soil Inspection contingencies, and cancelled the sale, under the terms of the Purchase Agreement;

b. directing the Debtor to expeditiously take all steps reasonably necessary to effectuate the immediate return of G & H's deposit of $450,000; and

c. requiring the Debtor to reimburse G & H the sum of $9,515 for reasonable attorneys' fees and costs incurred to recover the Deposit [Zohar Dec., ¶ 4.], no later than thirty (30) days after entry of the Order granting the Motion.

Dated:    November 19, 2025                    CROWN & STONE LAW, P.C.

By: /s/ Avi E. Muhtar
Avi E. Muhtar, Esq.
Attorneys for G & H Equities, LLC