**<u>DECLARATION OF ALONA HASSID</u>**

I, ALONA HASSID, declare as follows:

  1.  I am an individual residing in Los Angeles, California. I am an agent for the majority member of G & H Equities, LLC ("G & H"). I submit this declaration in support of G & H's motion for the release of its $450,000 deposit (the "Deposit") in connection with the sale of SUNSTONE DEVELOPMENT, LLC's (the "Debtor") real property located in Dana Point, California (the "Property"). The following facts are within my personal knowledge and if called as a witness to testify, I could and would competently testify to their accuracy.

  2.  A true and correct copy of the Offer, Agreement, and Escrow Instructions for Purchase of Real Estate (the "Purchase Agreement") approved by the Court governing the sale of the Property is attached hereto as <u>Exhibit</u> '<u>A</u>'.

  3.  On September 4, 2025, Galaxy Holding assigned its interest in the Purchase Agreement to G & H pursuant to that certain Assignment of Agreement Amendment which was concurrently countersigned by the Debtor. Attached hereto as <u>Exhibit</u> '<u>B</u>' is a true and correct copy of the Assignment of Agreement Amendment.

  4.  On August 28, 2025, G & H timely exercised its right to extend the Buyer Contingency Period (as defined in the Purchase Agreement) through September 17, 2025, pursuant to Section 9.2 of the Purchase Agreement. Attached hereto as <u>Exhibit</u> '<u>C</u>' is a true and correct copy of G & H's notice to the Debtor electing to extend the contingency period.

  5.  On September 10, 2025, G & H remitted the Deposit into escrow. Attached hereto as <u>Exhibit</u> '<u>D</u>' is a true and correct copy of correspondence I received from escrow that confirms their receipt of the Deposit.

  6.  On September 17, 2025, I advised the Debtor, on behalf of G & H, that G & H was not waiving its contingencies. Attached hereto as <u>Exhibit</u> '<u>E</u>' is a true and correct copy of my email to the Debtor. G & H also requested another extension for the contingency waiver deadline.  G & H's request for an extension was due to a report from its geotechnical and environmental consultant that it needed an additional eight weeks to complete its analysis of the Property. Buyer provided the Debtor with a copy of G & H's expert's geotechnical and environmental report; a true and correct

copy of that report is attached hereto as <u>Exhibit 'F'</u>.  We therefore needed a 56-day extension in order to allow the studies to be performed.  G & H clearly indicated that if the extension was not granted, Buyer would cancel the sale.

7.      We were advised that the Debtor's lender—Oakhurst—would only agree to a 56-day extension if Buyer paid an exorbitant fee of $631,060. This proposal was later confirmed by Mr. Leeds, Debtor's counsel, in his October 2, 2025 declaration filed with the court.

8.      The buyer would not agree to pay such a large amount of money in order to be given time to complete its necessary geotechnical and environmental studies. However, the parties agreed to an interim extension of 12 days in order to preserve the possibility of working out the issues between them. The parties thereafter agreed to amend the Purchase Agreement so that "[t]he Buyer[']s contingencies set forth in section 9.1 of the agreement are hereby extended to September 29th, 2025." A true and correct copy of the first Amendment to Purchase Agreement is attached hereto as <u>Exhibit 'G'</u>.

9.      On September 29, 2025, the Debtor executed that certain second Amendment to Purchase Agreement, thereby extending the Buyer Contingency Period through October 10, 2025. A true and correct copy of the second Amendment to Purchase Agreement is attached hereto as <u>Exhibit 'H'</u>.

10.      On behalf of G & H, I and G & H's principal, Raffi Cohen, thereafter, repeatedly advised the Debtor that G & H would not waive any contingencies and that a further extension was required so that the geotechnical/environmental expert could complete their due diligence. When the Debtor and the Debtor's lender refused to agree to an additional extension of time, G & H gave written notice and timely notice, first on October 9, and then on October 10, 2025, that it was not waiving any of the remaining contingencies, was cancelling the Purchase Agreement, and asking for the Deposit to be refunded. Attached hereto as <u>Exhibit 'I'</u> is a true and correct copy of the email thread reflecting these communications.

/ / /

/ / /

/ / /

1        11.    I continued discussions with the Debtor to resolve this dispute, as did our counsel, but

2    the Debtor refused to agree to return the Deposit to G & H.

3        I declare under penalty of perjury under the laws of the State of California that the foregoing

4    is true and correct. Executed this _19_th day of ___November___, 2025, in Los Angeles, California.

Alona Hassid

# Exhibit 'A'

Docusign Envelope ID: 45584DDC-8A44-4131-B925-D82F793892A0

Case 8.25-bk-11049-SC    Doc 1471    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 5 of 63



# OFFER, AGREEMENT AND ESCROW INSTRUCTIONS FOR
# PURCHASE OF REAL ESTATE
(Vacant Land)

Dated: **August 13, 2025**

**1.  Buyer.**

1.1    Galaxy Holding or Assignee, ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close September 30, 2025  ("**Expected Closing Date**") to be held by  Fidelity National  Title ("**Escrow Holder**") whose address is  MacArthur Boulevard, Suite 200 in Newport Beach, CA 92660 , Phone No.  949.290.6929 , Facsimile No. _____ upon the terms and conditions set forth in this agreement ("**Agreement**").  Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2    The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2.  Property.**

2.1    The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description)  An assemblage of four vacant commercial land parcels approximately 2.61 acres in total size.  is located in the County of  Orange , is commonly known as (street address, city, state, zip)  92629  and is legally described on Exhibit "A" attached hereto.

2.2    If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of  Fidelity National Title ("**Title Company**"), which shall issue the title policy hereinafter described.

2.3    The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: _____ (collectively, the "**Improvements**").

2.4    Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and __ all of which shall be removed by Seller prior to Closing.

**3.  Purchase Price.**

3.1    The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be ✓ $15,000,000 , or ☐ (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) _____ per unit. The unit used to determine the Purchase Price shall be: ☐ lot ☐ acre ☐ square foot ☐ other _____ prorating areas of less than a full unit. The number of units shall be based on a calculation of total area of the Property as certified to the Parties by a licensed surveyor in accordance with paragraph 9.1(g). However, the following rights of way and other areas will be excluded from such calculation: _____. The Purchase Price shall be payable as follows:

*(Strike any not applicable)*

(a)  Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):

$15,000,000

(b)  Amount of "New Loan" as defined in paragraph 5.1, if any:

(c)  Buyer shall take title to the Property subject to and/or assume the existing deeds(s) of trust ("**Existing Deed(s) of Trust**") securing the existing promissory note(s) ("**Existing Note(s)**"):

(i)  ~~An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said First Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).~~

(ii)  ~~An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said Second Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).~~

(d)  Buyer shall give Seller a deed of trust ("**Purchase Money Deed of Trust**") on the property, to secure the promissory note ~~of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~

3.2    If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

**4.  Deposits.**

4.1    ✓ Buyer has delivered to Broker a check in the sum of  $450,000 , payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver

Seller's Initials                                    Buyer's Initials

_____                    _____

Docusign Envelope ID: 45564DDC-3A44-4434-B925-D82E793892A0

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 6 of 63

to Escrow Holder a check in the sum of _____. If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2   Additional deposits:
(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.

(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.

(c) If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

4.3   Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "**Deposit**"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____. NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

4.4   Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

4.5   Upon waiver of all of Buyer's contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1(n) (Destruction, Damage or Loss) or 9.1(o) (Material Change).

**5.   Financing Contingency. (Strike if not applicable)**

5.1   This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least _____% of the Purchase Price, on terms acceptable to Buyer. Such loan ("**New Loan**") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2   If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within _____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.

5.3   If Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

**6.   Seller Financing. (Purchase Money Note). (Strike if not applicable)**

6.1   If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____% per annum, with principal and interest paid as follows: _____. The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.

6.2   The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):
(a)   *Prepayment.* Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.
(b)   *Late Charge.* A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.
(c)   *Due On Sale.* In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.

6.3   If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.

6.4   WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.

6.5   Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.

**7.   Real Estate Brokers.**

7.1   Each Party acknowledges receiving a Disclosure Regarding Real Estate Agency Relationship, confirms and consents to the following agency relationships in this transaction with the following real estate broker(s) ("Brokers") and/or their agents ("Agent(s)"):

Seller's Brokerage Firm  Coldwell Banker Commercial  License No. _____  is the broker of (check one):   the Seller; or ☑ both the Buyer and Seller (dual agent).

Seller's Agent  Ron Wright  License No.  01711950

| Seller's Initials | Buyer's Initials |
|---|---|
| BWC | FC |

Docusign Envelope ID:45564DDC-8A44-4434-B925-D82F793892A0

Case 8:25-bk-11049-SC   Doc 147-1   Filed 11/19/25   Entered 11/19/25 10:00:20   Desc
Exhibit Declaration of Alona Hassid   Page 7 of 63

\_\_ is (check one): ☑ the Seller's Agent (salesperson or broker associate); or ☐ both the Seller's Agent and the Buyer's Agent (dual agent).

Buyer's Brokerage Firm _____ License No. _____ is the broker of (check one): ☐ the Buyer; or ☐ both the Buyer and Seller (dual agent).

Buyer's Agent _____ License No. _____ is (check one):☐ the Buyer's Agent (salesperson or broker associate); or☐ both the Buyer's Agent and the Seller's Agent (dual agent).

The Parties acknowledge that other than the Brokers and Agents listed above, there are no other brokers or agents representing the Parties or due any fees and/or commissions under this Agreement. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2   Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker, agent or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers and Agents named in paragraph 7.1, and no broker, agent or other person, firm or entity, other than said Brokers and Agents is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, agent, finder or other similar party, other than said named Brokers and Agents by reason of any dealings or act of the indemnifying Party.

## 8.   Escrow and Closing.

8.1   Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions. In the event that there is any conflict between the provisions of the Agreement and the provisions of any additional escrow instructions the provisions of the Agreement shall prevail as to the Parties and the Escrow Holder.

8.2   As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3   Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4   Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "**Closing**") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5   Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11.)

8.6   Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7   If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in Paragraph 9.2 or disapproval of any other matter subject to Buyer's approval, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph 4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8   The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9   Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10   If this Escrow is terminated for any reason other than Seller's breach or default, then as a condition to the return of Buyer's deposit, Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property.

## 9.   Contingencies to Closing.

9.1   **IF, BEFORE EXPIRATION OF THE APPLICABLE TIME, BUYER FAILS TO PROVIDE ESCROW HOLDER WRITTEN NOTICE OF BUYER'S DISAPPROVAL OF ANY OF BUYER'S CONTINGENCIES OR ANY OTHER MATTER THAT IS SUBJECT TO BUYER'S APPROVAL IN THIS AGREEMENT, THEN BUYER SHALL BE CONCLUSIVELY DEEMED TO HAVE SATISFIED SUCH BUYER'S CONTINGENCIES AND/OR APPROVED OF SUCH OTHER MATTERS.** If a number of days is completed in any of the optional spaces in subparagraphs 9.1 (a) through (m), then such number shall apply and override the pre-printed number, even if the pre-printed number is not stricken. The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies:

(a)   *Disclosure.*  Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR CRE ("**AIR**") standard form entitled "**Seller's Mandatory Disclosure Statement**") and provide Buyer with a completed Property Information Sheet ("**Property Information Sheet**") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 days following the Date of Agreement. Buyer has until August 28, 2025 to approve or disapprove the matters disclosed.

(b) *Physical Inspection.*  Buyer has until August 28, 2025 to satisfy itself with regard to the physical aspects and size of the Property.

(c)  *Hazardous Substance Conditions Report.*  Buyer has until August 28, 2025 to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "**Hazardous Substance**" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) *Soil Inspection.*  Buyer has until August 28, 2025 to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test

Seller's Initials

BWC

Buyer's Initials

FC

Docusign Envelope ID: 45664DDC-8A44-4134-B925-D82F793892A9

Case 8.25-bk-11049-SC    Doc 1471    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 8 of 63

report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days following the Date of Agreement.

(e) *Governmental Approvals.* Buyer has until August 28, 2025 to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

NOTE: Past uses of the Property may no longer be allowed. In the event that the Property must be rezoned, it is Buyer's responsibility to obtain the rezoning from the appropriate government agencies. Seller shall sign all documents Buyer is required to file in connection with rezoning, conditional use permits and/or other development approvals.

(f) *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or          days following the Date of Agreement. Buyer has 10 days until August 28, 2025 to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) *Survey.* Buyer has until August 28, 2025 to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) *Existing Leases and Tenancy Statements.* Seller shall within 10 days following the Date of Agreement to provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("**Estoppel Certificate**") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has until August 28, 2025 from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) *Owner's Association.* Seller shall within 10 days following the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j) *Other Agreements.* Seller shall within 10 days following the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has until August 28, 2025 to satisfy itself with regard to such Agreements.

(k) *Financing.* If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l) *Existing Notes.* If paragraph 3.1(c) has not been stricken, Seller shall within 10 days following the Date of Agreement to provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "**Loan Documents**") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("**Beneficiary Statement**") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has until August 28, 2025 to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof.

(m) *Personal Property.* In the event that any personal property is included in the Purchase Price, Buyer has until August 28, 2025 to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 days following the Date of Agreement.

(n) *Destruction, Damage or Loss.* Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o) *Material Change.* Buyer shall have 10 days following receipt of written notice of a Material Change within to satisfy itself with regard to such change. "**Material Change**" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q) *Brokerage Fee.* Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("**Brokerage Fee**"). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

(r) *Bankruptcy Approval.* As a condition to Closing, for Seller's and Buyer's benefit, Seller must have received all necessary Bankruptcy Court approvals, including the entry by the Bankruptcy Court of the Sale Order and the Sale Order becoming final and non- appealable (final and non-appealable meaning that the time period in which to appeal has lapsed and either no appeal has been filed or if any appeal was filed, such appeal has been dismissed or finally resolved in favor of affirming the Sale Order in its entirety).

(s) *Superior Offers.* Notwithstanding anything to the contrary contained herein, Buyer acknowledges that prior to the hearing of the Bankruptcy Court related to the entry of the Sale Order (the "Sale Hearing"), this transaction will be subject to higher and better offers ("Superior Offers") (as more specifically set forth in the Sale Procedures) and Seller shall have the right to conduct an auction for the sale of the Property (the "Auction"). Seller may solicit additional bids for the Property in connection with or prior to the Auction and may provide potential bidders with information and documents concerning the Property. The Auction will be conducted in accordance with sale procedures substantially similar to and materially in the form attached to this Agreement as Exhibit "B" (the "Sale Procedures"), which shall be approved by an order to be entered by the Bankruptcy Court (the "Sale Procedures Order"). Seller agrees to submit this Agreement to the Bankruptcy Court and seek approval of the Sale Procedures as soon as commercially reasonable following execution. If the Bankruptcy Court approves sales procedures materially different from the procedures set forth in Exhibit "B", such procedures shall be deemed the "Sales Procedures" and the order approving them shall be deemed the Sales Procedures

Seller's Initials

BWC

Buyer's Initials

FC

Docusign Envelope ID: 45564DDC-8A44-4134-B925-D82F793893A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 9 of 63

Order, unless Buyer objects in writing to such procedures within five (5) days after the filing of the Bankruptcy Court's order approving such procedures. Buyer and Seller acknowledge and agree that this Agreement shall remain binding on the Buyer and Seller, subject to the terms and conditions contained herein, until (a) the fifteenth (15th) day after the entry of an order by the Bankruptcy Court approving the sale of the Property to a third party buyer in accordance with any Superior Offer ("Superior Offer Sale Order"), if no appeal has been filed from the Superior Offer Sale Order by that date, or (b) if an appeal has been filed from the Superior Offer Sale Order, the eleventh (11th) business day after the date on which such appeal is filed, unless a stay of the Superior Offer Sale Order has been granted; provided, however, that nothing in this paragraph shall limit any Party's right to terminate this Agreement pursuant to the provisions of this Agreement. Seller shall exercise best efforts to conduct the Auction and seek Bankruptcy Court approval of the sale of the Property as soon as is commercially reasonable.

(t)  **Termination.**

(i)  In addition to the express termination events set forth in this Agreement, this Agreement may be terminated, and the transactions contemplated hereby may be abandoned at any time, but not later than the Closing Date:

(A)  By mutual written consent of Buyer and Seller;

(B)  By Seller or Buyer if a condition to Closing for such party's benefit is not satisfied or waived on or prior to the Closing Date;

(C)  By Buyer or Seller if the Bankruptcy Court shall not have entered the Sale Order on or before one hundred eighty (180) days after the date of this Agreement ("Outside Bankruptcy Court Approval Date");

(D)  By Buyer or Seller, if Seller enters into an agreement to sell the Property pursuant to a Superior Offer, but only following the entry of a Superior Offer Sale Order ("Superior Offer Termination Event");

(ii)  Upon termination of this Agreement as the result of a Superior Offer Termination Event, Seller shall in addition to the return of the Deposit and as consideration for Buyer's due diligence efforts in pursuit of the transaction, pay to Buyer an amount equal to $25,000 ("Breakup Fee").

(iii)  In the event of the termination of this Agreement as provided above, (1) this Agreement shall terminate; (2) the Deposit and Breakup Fee shall be delivered to Buyer; (3) no party shall have any further liability hereunder, including any liability for damages; and (4) each party shall bear its own expenses which shall also survive the termination of this Agreement. In the event that a condition precedent to its obligation is not met, nothing contained herein shall be deemed to require any party to terminate this Agreement rather than to waive (without further Bankruptcy Court order or notice to any Person) such condition precedent and proceed with the Closing.

9.2  The contingencies specified in subparagraphs 9.1(a) through (m) are for the benefit of, and may be waived by, Buyer, and are referred to collectively as "**Buyer's Contingencies**" and individually as a "**Buyer's Contingency.**" The time periods provided in subparagraph 9.1(a) through (m) by which Buyer is required to satisfy with respect to the Buyer's Contingencies is referred to as the "Buyer Contingency Periods." Buyer shall have the right, in Buyer's sole discretion, to extend any of the Buyer Contingency Periods identified in subparagraphs 9.1(a) through (m) for an additional period of up to 20 days by delivering written notice to Seller on or before the last day of the original Buyer Contingency Period.

9.3  Buyer's timely and written disapproval or conditional approval of a Buyer's Contingency or any other matter that is subject to Buyer's approval in this Agreement shall constitute disapproval thereof ("**Disapproved Item(s)**"). Concurrent with notice of a Disapproved Item, Buyer may make a request to Seller regarding such Disapproved Item ("**Buyer's Request**"). Buyer acknowledges that Seller shall no duty or obligation of any kind whatsoever to amend, modify, or in any way ameliorate or attempt to amend, modify, or ameliorate any Disapproved Item, and Buyer's sole and exclusive remedy in the event Buyer disapproves of any one or more of such matters shall be to cancel this Agreement in accordance with Buyer's rights to do so contained herein.

9.4  The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests hereto.

**10.  Documents Required at or Before Closing.**

10.1  Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2  Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a)  Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b)  If applicable, the Beneficiary Statements concerning Existing Note(s).

(c)  If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d)  An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(e)  If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(f)  If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(g)  If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3  Buyer shall deliver to Seller through Escrow:

(a)  The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b)  If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

Seller's Initials

BWC

Buyer's Initials

FG

Docusign Envelope ID: 45664DDC-8AA4-4131-B925-D82F793897A9

Case 8.25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 10 of 63

(c)  The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d)  Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e)  If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f)  If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4  At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED.  A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11.  Prorations and Adjustments.**

11.1  *Taxes.*  Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available.  The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2  *Insurance.*  **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing.  Buyer is advised to obtain appropriate insurance to cover the Property.

11.3  *Rentals, Interest and Expenses.*  Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4  *Security Deposit.*  Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5  *Post Closing Matters.*  Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6  *Variations in Existing Note Balances.*  In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("**Existing Note Variation**"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation.  If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7  *Variations in New Loan Balance.*  In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8  *Owner's Association Fees.*  Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12.  Representations and Warranties of Seller and Disclaimers.**

12.1  Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects.  Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a)  *Authority of Seller.* Seller is the owner of the Property and/or, subject to the Sale Order being entered, has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b)  *Maintenance During Escrow and Equipment Condition At Closing.*  Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c)  *Hazardous Substances/Storage Tanks.*  Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d)  *Compliance.* Except as otherwise disclosed in writing, Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e)  *Changes in Agreements.*  Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f)  *Possessory Rights.*  Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g)  *Mechanics' Liens.*  There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h)  *Actions, Suits or Proceedings.*  Except as is otherwise set forth herein, Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i)  *Notice of Changes.*  Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

(j)  *No Tenant Bankruptcy Proceedings.*  Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k)  *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2  Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

BUYER HEREBY ACKNOWLEDGES THAT IT HAS READ AND IS FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 ("SECTION 1542"), WHICH IS SET FORTH BELOW:

Seller's Initials                                    Buyer's Initials

BWC                                                   FTC

Docusign Envelope ID: 45564DDC-8444-4134-B925-D82F793892A9

Case 8:25-bk-11049-SC   Doc 147-1   Filed 11/19/25   Entered 11/19/25 10:00:20   Desc
Exhibit Declaration of Alona Hassid   Page 11 of 63

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

BY INITIALING BELOW BUYER HEREBY WAIVES THE PROVISIONS OF SECTION 1542 SOLELY IN CONNECTION WITH THE MATTERS WHICH ARE THE SUBJECT OF THE FOREGOING WAIVERS AND RELEASES.

Buyer's Initials

The waivers and releases by Buyer herein contained shall survive the Close of Escrow and the recordation of the Deed and shall not. Be deemed merged into the Deed upon its recordation.

12.3  In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4  Any environmental reports, soils reports, surveys, feasibility studies, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13.  Possession.** Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14.  Buyer's Entry.**
At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15.  Further Documents and Assurances.**
The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16.  Attorneys' Fees.**
If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs.  Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment.  The term **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

**17.  Prior Agreements/Amendments.**
17.1  This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
17.2  Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18.  Broker's Rights.**
18.1  If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
18.2  Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19.  Notices.**
19.1  Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger, or by mail, postage prepaid, to the address set forth in this agreement or by facsimile transmission, electronic signature, digital signature, or email.
19.2  Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.
19.3  Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20.  Duration of Offer.**
20.1  If this offer is not accepted by Buyer on or before 5:00 P.M. according to the time standard applicable to the city of _Dana Point_ on the date of _8/14/2025_, it shall be deemed automatically revoked.

Seller's Initials

Buyer's Initials

Docusign Envelope ID: 45664DDC-8444-4134-B925-D82F793892A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 12 of 63

20.2  The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21.  LIQUIDATED DAMAGES.**

**22.  (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF  $450,000 . UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

Buyer's Initials                                                    Seller's Initials
_____                          _____

**23.  Buyer's Remedies.**
Buyer and Seller hereby agree that, in the event of Seller's breach of its obligations hereunder or if the sale contemplated by this Agreement is not completed as herein provided by reason of any default of Seller hereunder, then Buyer shall elect either to: (i) terminate this Agreement, in which even the Deposit will be delivered to Buyer and neither party will have any further obligation or liability under this Agreement (except as may be otherwise expressly provided in this Agreement) or (ii) bring any action for specific performance of Seller's obligations under this Agreement.

**24.  Miscellaneous.**
24.1  **Binding Effect.**  Buyer and Seller both acknowledge that they have carefully read and reviewed this Agreement and each term and provision contained herein. In addition, this Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed. Signatures to this Agreement accomplished by means of electronic signature or similar technology shall be legal and binding.
24.2  **Applicable Law.**  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California and the Bankruptcy Court to the extent applicable.
24.3  **Time of Essence.**  Time is of the essence of this Agreement.
24.4  **Counterparts.**  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.
24.5  **Waiver of Jury Trial.**  THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.
24.6  **Conflict.**  Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.  **Seller and Buyer must initial any and all handwritten provisions.**
24.7  **1031 Exchange.**  Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.
24.8  **Days.**  Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**25.  Disclosures Regarding the Nature of a Real Estate Agency Relationship.**
25.1  The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.
25.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:
(a)  *Seller's Agent.* A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
(b)  *Buyer's Agent.* A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.
(c)  *Agent Representing Both Seller and Buyer.* A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not, without the express permission of the respective Party, disclose to the other Party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Buyer has the duty to exercise reasonable care to protect Buyer, including as to those facts about the Property which are known to Buyer or within Buyer's diligent attention and

Seller's Initials                                                    Buyer's Initials
_____                          _____

Docusign Envelope ID: 45564DDC-8A44-4134-9925-D82F793892A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 13 of 63

observation. Both Seller and Buyer should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

(d) *Further Disclosures*. Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

25.3 *Confidential Information*. Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**26.  Construction of Agreement.**  In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**27.  Additional Provisions.**
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum or addenda consisting of paragraphs _____ through
_____. (If there are no additional provisions write "NONE".)
NONE

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: _____  8/14/2025 | 12:35:45 PM PDT

| BROKER | BUYER |
|---|---|
|  | GALAXY HOLDING OR ASSIGNEE |
| Attn: _____ __ | By: _____ |
| Attn: _____ | Name Printed: _Raffi Cohen_____ |
| Title: _____ | Title: _President_____ |
| Address: _____ | Phone: _____ |
| Phone: _____ | Fax: _____ |
| Fax: _____ | Email: raffi@galaxyholding.com |
| Email: _____ |  |
| Federal ID No.: _____ |  |
| Broker DRE License #: _____ | By: _____ |
| Agent DRE License #: _____ | Name Printed: _____ |

**28.  Acceptance.**
28.1 Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.
28.2 In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to 2% of the Purchase Price to be divided between the Brokers as follows: Seller's Broker _2.00_% and Buyer's Broker _0.00_ %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.
28.3 Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

Date: _____  8/14/2025 | 1:32:14 PM PDT

| BROKER | SELLER |
|---|---|
| COLDWELL BANKER COMMERCIAL | SUNSTONE DEVELOPMENT, LLC |
| Attn:  Ron Wright _____ | By: _____ Blake Wettengel, CEO |
| Title: Senior Associate _____ | Name Printed: _Blake Wettengel_____ |
| Address: _____ | Title: _Managing Member_____ |
| Phone: _949-463-7448_____ | Phone: _____ |
| Fax: _____ | Fax: _____ |
| Email: ron.wright@cbrealty.com_____ | Email: Blake@crewcos.com |

Seller's Initials                          Buyer's Initials
BWC                                        RC

Docusign Envelope ID: 45684DDC-8A44-413A-B925-D82F793892A9

Case 8:25-bk-11049-SC   Doc 147-1   Filed 11/19/25   Entered 11/19/25 10:00:20   Desc
Exhibit Declaration of Alona Hassid   Page 14 of 63

Federal ID No.: _____

By: _____

Broker DRE License #: __00616212_____

Name Printed: _____

Agent DRE License #: __01711950_____

Seller's Initials

Buyer's Initials

Docusign Envelope ID: 45684DDC-8A44-4131-B925-B82E793892A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 15 of 63

## EXHIBIT A
LEGAL DESCRIPTION

Real property in the City of Dana Point, County of Orange, State of California, described as follows:

PARCEL ONE: (APN: 682-165-01 AND 121-340-57)

THAT PORTION OF THE RANCHO BOCA DE LA PLAYA, IN THE CITY OF DANA POINT, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED JUNE 29, 1887 IN BOOK 4, PAGES 118 AND 119 OF PATENTS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY LINE OF THE CALIFORNIA STATE HIGHWAY, AS SHOWN ON A MAP OF TRACT NO. 932, RECORDED IN BOOK 29, PAGES 18 AND 19, MISCELLANEOUS MAPS OF SAID ORANGE COUNTY, WITH THAT LINE OF AGREEMENT RECORDED IN BOOK 548, PAGE 113 OF DEEDS AND SHOWN ON SAID MAP OF TRACT NO. 932, THENCE SOUTH 31° 28' 51" WEST 495.00 FEET ALONG SAID AGREEMENT LINE; THENCE NORTH 58° 31' 09" WEST 130.58 FEET TO A POINT ON A CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 372.16 FEET, A RADIAL LINE TO SAID POINT BEARING NORTH 71° 26' 04" WEST; THENCE NORTHERLY 83.89 FEET ALONG SAID CURVE TO THE SOUTHERLY PROLONGATION OF THE MOST EASTERLY LINE OF LOT X OF SAID TRACT NO. 932; THENCE NORTH 31° 28' 51" EAST 366.27 FEET ALONG A TANGENT LINE WHICH LINE IS ALSO SAID SOUTHERLY PROLONGATION AND SAID EASTERLY LINE OF LOT X TO THE BEGINNING OF A CURVE CONCAVE SOUTHEASTERLY AND HAVING A RADIUS OF 15.00 FEET; THENCE NORTHERLY AND EASTERLY 20.06 FEET ALONG SAID CURVE TO ITS POINT OF TANGENCY WITH SAID SOUTHERLY LINE OF THE CALIFORNIA STATE HIGHWAY, AT THE MOST EASTERLY CORNER OF SAID LOT X; THENCE SOUTH 72° 04' 00" EAST 132.18 FEET TO THE POINT OF BEGINNING.

EXCEPTING THAT PORTION THEREOF LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE MOST SOUTHERLY CORNER OF THAT PORTION OF SAID LOT X, THAT ADJOINS SAID LAND ON THE NORTHWEST; THENCE ALONG SAID NORTHWESTERLY LINE NORTH 31° 28' 51" EAST 67.84 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 42° 44' 46" EAST 15.86 FEET; THENCE NORTH 42° 04' 19" EAST 123.78 FEET; THENCE NORTH 75° 00' 10" EAST 51.94 FEET, MORE OR LESS, TO THE NORTHEASTERLY LINE OF SAID LAND.

ALSO EXCEPT THAT PORTION DESCRIBED IN THE FINAL ORDER OF CONDEMNATION CASE NO. 191501, A COPY OF WHICH WAS RECORDED SEPTEMBER 20, 1973 IN BOOK 10909, PAGE 589, OFFICIAL RECORDS.

ALSO EXCEPT WATER AS EXCEPTED BY RALPH W. QUACKENBUSH AND WIFE, IN DEED RECORDED SEPTEMBER 4, 1946 IN BOOK 1456, PAGE 46, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Docusign Envelope ID: 45684DDC-8444-4134-B925-D82F79389?A9

Case 8:25-bk-11049-SC   Doc 147-1   Filed 11/19/25   Entered 11/19/25 10:00:20   Desc
Exhibit Declaration of Alona Hassid   Page 16 of 63

PARCEL TWO: (APN: 682-166-08)

THAT PORTION OF LOT 2 OF SECTION 23, TOWNSHIP 8 SOUTH, RANGE 8 WEST, SAN BERNARDINO BASE AND MERIDIAN, AND OF THE RANCHO BOCA DE LA PLAYA, IN THE CITY OF DANA POINT, COUNTY OF ORANGE, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BOUNDED ON THE NORTH BY THE SOUTHERLY LINE OF STATE HIGHWAY AS SHOWN ON A MAP OF TRACT NO. 932, RECORDED IN BOOK 29, PAGES 18 AND 19 OF MISCELLANEOUS RECORDS OF SAID ORANGE COUNTY, BOUNDED ON THE EAST BY THE WESTERLY LINE OF 'THAT CERTAIN :PARCEL OF LAND CONVEYED TO FRANK DANIELS BY DEED RECORDED AUGUST 16, 1929 IN BOOK 305, PAGE 10 OF OFFICIAL., RECORDS, BOUNDED ON THE SOUTH BY A LINE PARALLEL WI'' FH AND DISTANT 200 FEET SOUTHERLY AND MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF TEM CALIFORNIA STA·FE HIGHWAY AS SAID HIGHWAY IS SHOWN ON THE MAP OF SAID TRACT NO. 932 AND BOUNDED ON THE WEST BY 'FRE EASTERLY LINE OF LAND CONVEYED TO BRYON CALVI AND GEORGIANNA. CALVI, RECORDED AUGUST 10, 1950, IN BOOK 2053, PAGE 451 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THOSE PORTIONS INCLUDED WITHIN TRACT NO. 932, AS SHOWN ON A MAP RECORDED IN BOOK 29, PAGES 18 AND 19 OF MISCELLANEOUS MAP, RECORDS OF ORANGE COUNTY.

ALSO EXCEPTING THEREFROM THAT PORTION CONVEYED TO THE COUNTY OF ORANGE BY DEED RECORDED FEBRUARY 16, 1965 IN BOOK 7415, PAGE 172 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER ON THE SURFACE OF AND/OR UNDERLYING THAT PORTION OF SAID LAND INCLUDED WITHIN THE RANCHO BOCA DE LA PLAYA AS GRANTED TO SAN JUAN WATER COMPANY BY DEED RECORDED AUGUST 30, 1928 IN BOOK 196, PAGE 57 OF OFFICIAL RECORDS.

PARCEL THREE: (APN: 682-166-24)

PARCEL 2 AS SHOWN ON EXHIBIT "A" ATTACHED TO LOT LINE ADJUSTMENT LLA20-0002 RECORDED NOVEMBER 5, 2020 AS INSTRUMENT NO. 2020000638003 OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM, ALL WATER ON THE SURFACE OF AND/OR UNDERLYING THAT PORTION OF SAID LAND INCLUDED THE RANCHO BOCA DE LA PLAYA, AS GRANTED TO SAN JUAN WATER COMPANY BY DEED RECORDED AUGUST 30, 1928, IN BOOK 196, FACIE, 57 OF OFFICIAL RECORDED AUGUST 30, 1928 IN BOOK 196, PAGE 57 OF OFFICIAL RECORDS OF THE COUNTY OF ORANGE.

Docusign Envelope ID: 45584DDC-8444-4434-9925-D82F79289A0

Case 8.25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 17 of 63

PARCEL FOUR:

AN EASEMENT FOR EMERGENCY INGRESS AND EGRESS AS DESCRIBED IN GRANT DEED RECORDED DECEMBER 18, 2020 AS INSTRUMENT NO. 2020-751094 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF PARCEL 1 PER LLA 19-761 IN THE CITY OF DANA POINT, COUNTY OF ORANGE, STATE OF CALIFORNIA, RECORDED ON NOVEMBER 5, 2020, AS INSTRUMENT NO. 2020-000638003 IN THE OFFICE OF THE COUNTY RECORDER OF ORANGE COUNTY, BEING DESCRIBED AS FOLLOWS:

THE EASTERLY 20.00 FEET OF THE WESTERLY 36.00 FEET, EXCEPTING THEREFROM THE NORTHERLY 10.00 FEET OF SAID PARCEL 1.

Docusign Envelope ID: 45564DDC-8A44-4134-B925-B82F793892A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 18 of 63

## SALE PROCEDURES

### In re SUNSTONE DEVELOPMENT, LLC
United States Bankruptcy Court for the
Central District of California, Case No. *25-bk-11049-SC*

A.    **Debtor's Property.**  Debtor and Debtor-in-Possession Sunstone Development, LLC is the owner of four parcels of vacant land in Dana Point, California (Debtor's "Property" or the "Dana Point Parcels"). Two of the Dana Point Parcels (Assessor Parcel Numbers ("APN") 121-305-57 and 682-165-01) are located on the southwest corner of Pacific Coast Highway and Dana Point Harbor Drive ("Southside Parcels") and two of the Dana Point Parcels (APNs 682-166-24 and 682-166-08) are located on the northwest corner ("Northside Parcels"). Debtor has determined it is in the best interests of creditors and the estate to sell the Dana Point Parcels and is filing a motion ("Sale Motion") in its Chapter 11 bankruptcy proceeding requesting approval of this sale. To ensure the best price for the Dana Point Parcels is received, the Sale Motion will request the sale be subject to higher and better bids in accordance with the procedures set forth herein.

B.    **Sale Motion Hearing ("Sale Hearing").**  A hearing on Debtor's Sale Motion will take place on September 4, 2025 at 11:00 a.m. The hearing will be held in Courtroom 5C of the United States Bankruptcy Court for the Central District of California, Santa Ana Division located at 411 West Fourth Street, Santa Ana, California, 92701-4593 before the Honorable Scott Clarkson.

C.    **Qualified Bids.** Debtor will consider qualified bids ("Qualified Bids") for the Dana Point Parcels at the Sale Hearing but will not consider proposed bids that are not Qualified Bids. For a proposed bid to be deemed a Qualified Bid, the bid will need to meet the criteria set forth below. Notwithstanding anything contained herein, however, to ensure maximum value is received for the Dana Point Parcels, the Auction will be conducted in a manner that allows interested parties to submit bids for the Northside and Southside Parcels separately as well as bulk bids for the purchase of the Dana Point Parcels collectively.

D.    **Galaxy's Stalking Horse Bid.** Galaxy Commercial Holding, LLC or its designated assignee ("Galaxy") shall be deemed a qualified bidder, and Debtor's purchase agreement with Galaxy for the purchase of the Dana Point Parcels shall be deemed a Qualified Bid. At the Sale Hearing, Galaxy's bid as outlined in its purchase agreement with be treated as the "stalking horse bid" and all bids submitted must, in Debtor's sole and unfettered discretion, be superior to Galaxy's bid to be considered a Qualified Bid.

E.    **Timing.** All of the documents and information submitted pursuant to subparagraphs 2 through 5 must be received by (a) Debtor's broker, Ron Wright at ron.wright@cbrealty.com and (b) Debtor's bankruptcy counsel, Paul Leeds at pleeds@fsl.law and Meredith King at mking@fsl.law, no later than **5:00 p.m. on August 31, 2025** (the "Bid Deadline"). Unless a bid containing all of the required documents and information is submitted by the Bid Deadline, it will not constitute a Qualified Bid.

F.    **Form and Content of Bid.** To be a Qualified Bid, any bid must include an executed purchase agreement. The Agreement between Debtor and Galaxy shall be used as a form for all bidders (the "Form Agreement"). In the event a purchase agreement executed in connection with a bid differs in any respect from the Form Agreement, the bid must contain a redline of the bidder's purchase agreement showing the differences between their purchase agreement and the Form Agreement. A bid will be considered only if the executed purchase agreement containing the bid:

1.    Is on terms and conditions (other than the amount of the consideration) that are substantially similar to, and are not materially more burdensome or conditional than, those contained in Debtor's agreement with Galaxy;

2.    Proposes a transaction Debtor determines, in its sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, constitutes an initial bid that is at least $250,000 greater than the "Purchase Price" plus the "Breakup Fee" set forth in the Galaxy Agreement; and

EXHIBIT B

Docusign Envelope ID: 45E64DDC-8A44-4134-B925-B82F793892A9

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 19 of 63

3.  Is not conditioned upon any bid protections, such as a breakup fee, termination fee, expense reimbursement, or similar type of payment.

G.    **Offers Irrevocable.** To be a Qualified Bid, bids must be irrevocable through the Auction; provided however, that if a bid is accepted as the successful bid or a backup bid, the bid will remain irrevocable, subject to the terms and conditions of the accepted purchase agreement.

H.    **Deposits.** To be a Qualified Bid, bids must be accompanied by a deposit in the form of a cashiers' check or wire transfer of immediately available funds in the amount of $450,000 made payable to Fidelity National Title ("Escrow Holder") whose address is  MacArthur Boulevard, Suite 200 in Newport Beach, CA 92660 with written notice to Debtor's representatives identified in Paragraph B.1. The Escrow Holder shall hold deposits in segregated accounts subject to further order of the Court. The deposit of any Qualified Bidder that is not identified at the Sale Hearing the successful bidder or a qualified backup bidder shall be returned as soon as practicable after the Sale Hearing. If the successful bidder at the Auction timely closes escrow on the Property, its deposit and interest accruing thereon shall be credited towards its purchase price. The deposits of any bidders designated as backup bidders at the Sale Hearing will be returned as soon as is practicable after the successful bidder closes escrow on the Property. In the event the successful bidder fails to close on the sale of within the time parameters approved by the Court, the deposit of any backup bidder and any interest accruing thereon will be credited towards its purchase price.

I.    **Ability of Bidder to Consummate Transaction.** To be a Qualified Bid, bids must include written financial evidence, satisfactory to Debtor, demonstrating the bidder can consummate the sale within the required deadline to close.

J.    **Due Diligence.** Debtor will afford each bidder due diligence access to the Dana Point Parcels. Debtor may, in its discretion, coordinate diligence efforts such that multiple bidders have simultaneous access to due diligence materials or inspection sites. Debtor is not obligated to furnish any information relating to the Property to any person other than to bidders who have made an acceptable preliminary proposal. Each Qualified Bidder will be deemed to acknowledge and represent that they: (i) have had an opportunity to conduct any and all due diligence regarding the Property prior to making their offer; (ii) have relied solely upon their own independent review, investigation, and/or inspection of any documents and/or the Property in making their bid; and (iii) they did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction, except as expressly stated in the definitive agreement with the successful bidder approved by the Bankruptcy Court.

K.    **Qualification and Disqualification of Bids.** No later than 5:00 p.m. three business days before the Sale Hearing (the "Determination Deadline"), Debtor shall determine and shall inform each bidder whether it has submitted a Qualified Bid. Debtor shall have the right to permit a bidder that submitted a bid prior to the Bid Deadline that was not a Qualified Bid to modify the bid so that the bid will be deemed a Qualified Bid.

L.    **Bankruptcy Court Resolution of Disputes.** All Qualified Bidders will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction or the sale of the Dana Point Parcels.

M.    **Auction If Qualified Bids.** If no Qualified Bid (other than the Galaxy Agreement) is received by the Bid Deadline, no Auction will be conducted, and the Galaxy Agreement shall be deemed to be the successful bid. However, if Debtor determines by the Determination Deadline that there are one or more Qualified Bids, Debtor will hold an auction (the "Auction") at the Sale Hearing in accordance with the auction procedures set forth below to determine the highest or otherwise best Qualified Bid ("Successful Bid"). As set forth above, the Auction will be conducted in a manner that allows for the consideration of separate bids for the Northside and Southside Parcel as well as bulks bids for all four Dana Point Parcels.

Auction Procedures:

1.  Debtor (or the Court, if that is the Court's preference) shall direct and preside over the Auction at the Sale Hearing. Only entities that submitted Qualified Bids may participate in the Auction.

EXHIBIT B

Docusign Envelope ID: 45684DDC-8A44-4134-B925-D82F793892A9

2. At the commencement of the Auction, Debtor shall announce the Qualifying Bids Debtor has received and identify, in its determination, the highest and best offer (or offers) over the Galaxy bid. In making this determination, Debtor shall have the right to consider, among other things:

    (a) The number, type, and nature of any changes to the Form Agreement the bidder requests.

    (b) The extent to which such modifications are likely to delay closing of the sale and the cost to Debtor of such modifications or delay.

    (c) The likelihood of the bidder's ability to close a transaction and the timing thereof.

3. At the Auction, further overbids must be in increments that collectively net at least $100,000 in additional cash. Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids, or minimum increments of overbids and whether and to what extent separate bids for the Northside and Southside Parcels will be considered), provided that such rules are not inconsistent with the noticed bidding procedures. Any overbids made at the Auction must comply with the conditions for Qualified Bids set forth herein; provided, however, that the Bid Deadline shall not apply. Any overbid(s) must remain open and binding on the bidder until and unless Debtor accepts higher overbid(s).

4. The Auction will continue until Debtor determines it has received the highest or otherwise best Qualified Bid(s). The Auction will not close unless and until all bidders who have submitted Qualified Bids have been given a reasonable opportunity, as determined by Debtor or the Court, to submit overbids. At the conclusion of the Auction, Debtor will announce which of the bids is, in its determination, constitutes the highest and best offer(s), and these bid(s) will be presented to the Court for approval.

5. All unsuccessful final bids at the Auction (excluding the approved Buyer's bid) shall, with the bidders consent, be treated as binding back-up bids and, in the event that the successful bidder fails to consummate the sale, Debtor shall have the right to select one of the unsuccessful final bids as the replacement successful bid.

    **N.** **Breakup Fee.** Recognizing Galaxy's expenditure of time, energy, and resources, Debtor has agreed that if Galaxy is not the successful bidder at the Auction and Debtor terminates the Galaxy Agreement to close an alternative transaction, Debtor will pay Galaxy a break-up fee in the amount of $25,000 ("Breakup Fee"). The Breakup Fee will be paid from proceeds of the sale of the Property and will be governed by the provisions of the Galaxy Agreement and the Sale Procedures Order. In exchange for the Break Up Fee, Galaxy shall assign to the Successful Bidder all documents and/or clearances obtained for the purpose of satisfying the contingencies listed in Section 9.1 of the Galaxy Agreement, including but not limited to any environmental, soils and survey reports.

EXHIBIT B

# Exhibit 'B'

Docusign Envelope ID: 450E746F-C535-4688-8484-AC8D6246BF77



**ASSIGNMENT OF AGREEMENT AMENDMENT**

(C.A.R. Form AOAA, Revised 6/24)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____, dated _08/13/2025_ ("Agreement"),
on property known as **34311 PACIFIC COAST HWY, Dana Point, California  92629** ("Property"),
between _____**Galaxy Holding or Assignee**_____ ("Buyer")
and _____**Sunstone Development LLC**_____ ("Seller").
Buyer and Seller are referred to as the "Parties."

In consideration, of the covenants contained herein, Buyer hereby assigns to assignee and assignee accepts the assignment, subject to Seller's consent if required by the Agreement, of all or a partial interest of Buyer's right, title, and interest under the Agreement, including without limitation, the right, title, and interest in any deposit or down payment upon the following terms and conditions:

1. **PARTIAL OR TOTAL ASSIGNMENT:**
   **A.** ☐ **PARTIAL ASSIGNMENT (Adding a buyer):** Buyer is adding the Assignee(s) named below to the Agreement and granting to such Assignee(s) a partial interest in the Agreement.
   OR **B.** ☒ **TOTAL ASSIGNMENT (New buyer(s) replaces all original Buyers):** Buyer is assigning all of Buyer's interest in the Agreement to the Assignee(s) named below.
   OR **C.** ☐ **OTHER ASSIGNMENT (Replacing a Buyer and at least one original Buyer remaining; or Deleting a Buyer):** _____ (buyer(s) being removed) is assigning all of that buyer(s) interest in the Agreement to the new or remaining buyer(s) (Assignee(s)) named below.
   **D.** **ASSIGNEE(S) NAMES:** _____**G&H Equities LLC**_____,_____ .
   **E.** ☐ Assignee is Buyer's own trust or a wholly-owned entity of Buyer.
2. **PRIOR DOCUMENTS:** Assignee shall initial the first page of each document and Deliver to Seller all of the transaction documents previously approved by Buyer including, but not limited to, all contract documents, inspection reports, pamphlets, advisories, and disclosures ("Prior Documents") within the time specified below. Unless Otherwise Agreed, Assignee acknowledges that all time frames in the Agreement remain the same and no Additional time shall be provided for any matter including, but not limited to, investigation, review of documents, or Close Of Escrow.
   **A.** **DELIVERY OF PRIOR DOCUMENTS:**
   (1) **Prior Documents already delivered to Assignee:** Assignee acknowledges that Buyer has already provided Assignee all Prior Documents.
   OR (2) ☐ **Prior Documents not yet delivered to Assignee:** Seller shall Deliver to Buyer and Assignee a seller-signed copy of this Assignment of Agreement Addendum ("Assignment"). Upon receipt of the seller-signed Assignment, Buyer shall immediately Deliver to Assignee all Prior Documents.
   **B.** **PREQUALIFICATION OR PREAPPROVAL OF ASSIGNEES:** Assignee has been prequalified or preapproved by Buyer's lender as per the Agreement and a copy is attached. This requirement applies even if **1E** is checked.
   **C.** **TIME TO RETURN ASSIGNEE-INITIALED PRIOR DOCUMENTS:**
   (1) Initialed copies of all Prior Documents are attached to this Assignment.
   OR (2) ☐ Assignee shall Deliver initialed copies of all Prior Documents to Seller within **3 (or _____ ) Days** after Seller Delivers to Assignee a Signed Copy of this Assignment.
   (3) If **1E** is checked, Delivery and Return of Prior Documents is not required because Assignee is Buyer's own trust or a wholly-owned entity of Buyer.
   **D.** **EFFECT OF FAILURE TO RETURN OR ATTACH DOCUMENTS:** Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Assignment and the Assignment shall have no further force and effect:
   (1) **Prior Documents:** If Assignee does not Deliver to Seller all Prior Documents within the time specified in **2C**.
   (2) **Prequalification or preapproval:** If Assignee does not attach same prequalification or preapproval from Buyer's lender as required by Buyer.
3. **CONSIDERATION FOR ASSIGNMENT:**
   **A.** Buyer has not received and will not receive any monetary consideration from Assignee for this Assignment.
   OR **B.** ☐ Buyer has received or will receive consideration from Assignee in the amount of $_____ (or ☐ _____).
4. Assignee represents for the benefit of Seller that Assignee ratifies and approves as Assignee's own acts all prior approvals and acts of Buyer pursuant to the Agreement up to and including the date of this Assignment.
5. Assignee assumes and agrees to perform and observe all of the obligations and covenants of Buyer in the Agreement to be performed after the date of this Assignment.
6. Buyer acknowledges and agrees that, notwithstanding Seller's agreement to this Assignment, Buyer is not released from any obligations or covenants under the Agreement.
7. Other terms: _____
8. Without releasing Buyer from any obligations or covenants under the Agreement and preserving all rights and remedies under the Agreement, in consideration of the covenants contained herein, Seller consents to the foregoing Assignment.

© 2024, California Association of REALTORS®, Inc.
**AOAA REVISED 6/24 (PAGE 1 OF 2)**



**ASSIGNMENT OF AGREEMENT AMENDMENT (AOAA PAGE 1 OF 2)**

**3.** The parties acknowledge and agree that they have been advised to review this Assignment with a qualified California real estate attorney and/or tax professional. Broker(s) (including listing and selling Broker) and agents make no representation as to the propriety, adequacy, legality or tax consequences of this Assignment.

**By signing below, Buyer assigns the Agreement to Assignee, and Assignee accepts the assignment from Buyer, and Buyer and Assignee, acknowledge that each has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

_____   9/4/2025 | 10:48:45 AM PDT
Buyer *Galaxy Holding or Assignee*                                    Date

_____   _____
Buyer                                                               Date

☐ **ENTITY ASSIGNEE: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) **Non-Individual (entity) Assignee:** One or more Assignees is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____ .

(3) **Contractual Identity of Assignee:** For purposes of this Agreement, when the name described below is used it shall be deemed to be the full entity name.

   (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

   (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**

   (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to Seller and Escrow Holder, within **3 Days** of signing, evidence of authority to act in that capacity.

   (B) The name(s) of the Legally Authorized Signer(s) is: _____, _____ .

**ASSIGNEE SIGNATURE(S):**

(Signature) By, _____  Date: _____   9/4/2025 | 10:48:45 AM PDT
Printed name of ASSIGNEE: *G&H Equities LLC*
☐ Printed Name of Legally Authorized Signer: Raffi Cohen        Title, if applicable: _____

(Signature) By, _____  Date: _____
Printed name of ASSIGNEE: _____
☐ Printed Name of Legally Authorized Signer: _____     Title, if applicable: _____
☐ **IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA)**

**By signing below, Seller consents to the assignment and acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

_Blake Wettengel, CEO_____   9/4/2025 | 10:58:25 AM PDT
Seller *Sunstone Development LLC*                                 Date

_____   _____
Seller                                                             Date

---

ASSIGNMENT **NOT** ACCEPTED: _____/_____ . This assignment was **NOT** accepted by Seller on _____ (date).
            Seller Initials

**Seller's right to disapprove an assignment, if applicable, is established in the Agreement.**

---

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**AOAA REVISED 6/24 (PAGE 2 OF 2)**

# Exhibit 'C'

Docsign Envelope ID: 3802ABA4-0CFA-44E7-83DA-48234D887045

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 25 of 63

To Whom It May Concern,

In accordance with Section 9.2 of the Purchase and Sale Agreement, we hereby exercise our contractual right to extend the contingency period an additional 20 days for the property located at 34311 Pacific Coast Highway, Dana Point, California, consisting of four vacant land parcels.

This extension is necessary in order to complete our due diligence process. We are currently:

- Working with Foster Architect on site planning and feasibility studies.
- Holding meetings with key stakeholders, including city council members and HOA/community leaders, to determine what development programs will be acceptable and achievable on the site.
- Coordinating with our proposed hotel operator, IHG, to review operational requirements, financial feasibility, and brand standards for a potential hospitality use.
- Completing environmental reviews and geotechnical (soil) analysis

Due to the scope and complexity of this assemblage, additional time is necessary to complete our due diligence in a thorough manner. The extension will enable us to finalize our evaluations and proceed toward a successful closing.



8/28/2025 | 12:10:05 PM PDT

**Raffi Cohen**
Founder, CEO, and President



 8906 West Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Mobile: 310.261.7100
Office:  310.273.7233
raffi@galaxyholding.com
galaxyholding.com

# Exhibit 'D'

 Gmail

Alona Hassid <alonahassid@gmail.com>

---

**FW: Order #FBDO-2507753 - APN(s): 682-165-01, 121-340-57, 682-166-08 AND 682-166-24, Dana Point, CA 92629**

---

**BRTeam** <BRTeam@fnf.com>                                                            Wed, Sep 10, 2025 at 2:11 PM
To: "Shippy, Ryan" <ryan.shippy@cbrealty.com>, TheATeam <TheATeam@fnf.com>, "raffi@galaxyholding.com" <raffi@galaxyholding.com>, "mking@fsl.law" <mking@fsl.law>, "Torres, Zac" <Zac.Torres@fnf.com>, "blake@crewcos.com" <blake@crewcos.com>, "Dooley, Teresa" <tdooley@itc4u2.com>, "alonahassid@gmail.com" <alonahassid@gmail.com>
Cc: "Griffiths, Katherine" <pebblebeachkathy@gmail.com>

Good afternoon,

We are in receipt of the initial deposit in the amount of $450,000.

Thank you,


**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D) Brenna.Ryan@fnf.com**
4400 MacArthur Blvd., Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn



[Quoted text hidden]

# Exhibit 'E'

 Gmail

Alona Hassid <alonahassid@gmail.com>

---

## FW: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

**Alona Hassid** <alonahassid@gmail.com>                                                    Wed, Sep 17, 2025 at 10:26 AM
To: BRTeam <BRTeam@fnf.com>
Cc: Mason Lareuse <Mason@galaxyholding.com>, Raffi Cohen <raffi@galaxyholding.com>, "Torres, Zac" <Zac.Torres@fnf.com>

We are in talks with Seller/Broker for more time.

***In the meantime - this is to confirm that the deposit made shall remain FULLY refundable and that Buyer does not waive any contingencies.***

If the agreement requires anything else be put in writing regarding the deposit remaining refundable - let me know so we can get it done ASAP.

-----

Regards,

Alona Hassid
1340 E. 6th Street #200
Los Angeles, CA 90021
Tel. (213) 688.9190
Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

# Exhibit 'F'

# LANGAN

Technical Excellence
Practical Experience
Client Responsiveness

September 16, 2025

Raffi Cohen, President
Galaxy Holding
8906 West Olympic Boulevard, Suite 200
Beverly Hills, CA 90210

**RE:    Proposal for Geotechnical and Environmental Engineering Services**
**Proposed Dana Point Development**
**Dana Point Harbor Drive between Pacific Coast Highway and Park Lantern**
**Dana Point, California**
**Langan Proposal No.: 700182901**

Dear Raffi:

We are pleased to submit this proposal to perform geotechnical and environmental investigations for the proposed hotel development planned east and west of Dana Point Harbor Drive, south of Pacific Coast Highway in Dana Point, California. The site location is shown on Figures 1 and 2.

The scope of services presented herein is based on our long-term relationship with you in providing similar services for complex development projects, specifically noting that it's prudent to perform sufficient geotechnical and environmental (where applicable) investigations to inform the planned development.

The site consists of two discontinuous properties, designated herein as the East and West sites. The East Site is located along the east side of Dana Point Harbor Drive and is approximately 1.4 acres; the West Site is located along the west side of Dana Point Harbor Drive and is approximately 1.2 acres as shown on Figures 1 and 2.

The northern side of the West Site is currently developed with two fast food restaurants and one retail store. The remainder of the site is vacant with a strip of asphalt concrete (AC) paved parking and driveway on the south side of the lot. The ground surface level at the west site slopes gently to the east and ranges from approximately Elevation 25 to 21.

The East Site is currently vacant and unpaved with trees and shrubs around the eastern and southern boundaries. We understand that the east site has recently been used to for truck and /or equipment storage. The ground surface level at the east site slopes gently to the south and ranges from approximately Elevation 19 to 11.

The proposed development will include an approximately 200-room, 5-story hotel building.

The site is located in a City- and State-designated liquefaction hazard zone and the historical high groundwater level at the site is approximately five feet below the existing ground surface (bgs).

You furnished us with a geotechnical reconnaissance report dated January 27, 2022 prepared by Geocon West, Inc. The prior report concluded liquefaction settlement may occur in the event of strong ground shaking and recommended alternatives to mitigate liquefaction-induced settlement.

In order to develop design level foundation, grading and seismic design recommendations, a comprehensive geotechnical investigation and corresponding analysis is required. Additionally, since the east site was used for storage of materials and vehicle parking, it would be prudent to perform environmental sampling and testing at the site to identify potentially hazardous materials that may be present as a result of the site usage.

18575 Jamboree Road, Suite 150      Irvine, CA 92612      T: 949.561.9200      F: 949.561.9201      www.langan.com

New Jersey • New York • Connecticut • Massachusetts • Pennsylvania • Washington, DC • West Virginia • Ohio • Florida • Texas • Colorado • Arizona • Washington • California
Athens • Calgary • Dubai • London • Panama

Our scope of services for our proposed geotechnical investigation, comprehensive design-level report, and environmental sampling evaluation are presented below followed by our fee schedule.

## SCOPE OF SERVICES

### Task 1 - Geotechnical Investigation and Report

We will drill eight borings (borings B-1 through B-8) to depths ranging from 25 to 50 feet below ground surface (bgs) using mud-rotary drilling methodology. Four borings will be drilled on the west site and four borings will be drilled on the east site.

Mud-rotary drilling is best-suited when performing geotechnical investigations below the groundwater level and minimizes disturbance to the soils at each sampling interval.

To supplement the exploration borings, we will also advance eight cone penetration tests (CPTs) to depths ranging from 50 to 100 feet bgs. Four CPTs will be pushed on the west site and four CPTs will be pushed on the east site.

We will maintain a log of the subsurface conditions encountered in the borings and CPTs. Upon completion of the subsurface exploration, we will backfill the borings and CPTs with bentonite grout. Excess soil cuttings produced by the subsurface exploration will be left on site.

We will perform geotechnical laboratory testing on select samples collected from the borings. The laboratory testing will include the following tests as beneficial to the liquefaction evaluation:

- In-situ moisture content and in-place dry-density
- Maximum dry-density and optimum moisture content
- Direct shear
- Consolidation
- Atterberg Limits
- Percent Passing # 200 Sieve
- R-value

We will utilize the data from our explorations and laboratory testing, and applicable data from the prior report, to develop geotechnical design recommendations and prepare an independent geotechnical design report for the proposed development. Our report will include the following primary items:

- A site plan showing the boring and CPT locations relative to the proposed building footprint
- Logs of the explorations
- A geologic and seismic hazard evaluation
- Seismic design parameters in accordance with the 2022 or 2025 California Building Code
- Development of a Site-specific response spectra
- Results of our liquefaction analysis
- Recommendations for foundation design including soil improvement alternatives
- Foundation design and construction recommendations
- Recommendations for floor slab support
- Recommendations for pavement design and construction
- Recommendations for earthwork and grading

We will collaborate with the design team as we perform our analysis and prepare our report. We will also provide as-needed consultation after submittal of our report to support the design development and permitting.



*Proposal for Comprehensive Geotechnical Engineering Services*
*Proposed Dana Point Development*
*Dana Point Harbor Drive and Pacific Coast Highway*
*Dana Point, California*
*Langan Proposal No.: 700182901*

*September 16, 2025*
*Page 3 of 4*

**Task 2 – Environmental Field Sampling and Chemical Testing**

We will drill 12 borings within the East Site to depths of up to five to ten feet bgs for the purpose of environmental sampling. We will screen the samples collected in the environmental hand augers using a photo-ionization detector (PID) for the presence of VOCs.

During drilling, we will note any noticeable odors and discoloration of all samples collected that may indicate the presence of impacted soils.

Upon completion of the hand augers, we will select a representative number of samples for chemical testing. Testing contemplated

- TPH-gasoline, -diesel and -motor oil (EPA Method 8015B)
- VOCs (EPA Method 8260)
- Semi-volatile organic compounds (SVOCs, EPA 8270)
- Title 22 Metals (EPA 6010B/7471A)

We will summarize the results of our environmental investigation in a report that will outline environmental site conditions that may impact the planned development and present recommendations for supplemental explorations and/or analysis as appropriate.

**SCHEDULE**

We anticipate geotechnical and environmental investigations, testing, analysis and reporting will require approximately eight weeks to complete.

**FEES**

We anticipate the fees for the comprehensive geotechnical investigation will be on the order of $75,000 and the fee for the environmental investigation and report will be on the order of $50,000.

As we have discussed and mentioned previously, collecting good geotechnical and environmental site conditions will allow development of confident foundation and grading plans, costs and schedules and is consistent with the numerous prior projects we've worked on with your firm.

The fees for our services will be billed in accordance with the attached fee schedule and that supplemental services beyond those outlined herein will be billed on a time and materials basis in accordance with the attached fee schedule.

Our services will be performed in accordance with the terms and conditions of our existing contract for professional services with you that was executed on January 25, 2024.



*Proposal for Comprehensive Geotechnical Engineering Services*
*Proposed Dana Point Development*
*Dana Point Harbor Drive and Pacific Coast Highway*
*Dana Point, California*
*Langan Proposal No.: 700182901*

*September 16, 2025*
*Page 4 of 4*

## CLOSING

We sincerely appreciate the opportunity to provide professional services for this project and look forward to working with you on this project. Please contact us at your convenience to discuss any questions you may have regarding this proposal.


Sincerely,
**Langan CA, Inc.**


Jennifer Schmidt
Senior Project Geologist


Christopher J. Zadoorian, GE 2493, F. ASCE
Associate Principal


Rory Johnston, PE, GE, BCEE
Managing Principal



Enclosures:      Figure 1 – Site Plan
                 Schedule of Fees

\\langan.com\data\IRV\data9\700182901\Outbound\2025-09-16- Proposal\700182901-geop-091625-cjz-jrs.docx

**LANGAN**



**LEGEND:**

- SITE LIMITS
- EXISTING BUILDING
- B-1 / 50.0 — PROPOSED BORING LOCATION AND DEPTH IN FEET
- CPT-1 / 50.0 — PROPOSED ENVIRONMENTAL BORING LOCATION AND DEPTH IN FEET

**NOTES:**

1. BACKGROUND SITE PLAN REFERENCED FROM DRAFT-TOPO-ALL PARCELS, DATED JUNE, 5, 2016.

SCALE IN FEET
100  50  0  100

| | | | | |
|---|---|---|---|---|
| **Project** | **Figure Title** | **Proposal No.** 700182901 | **Figure No.** |
| DANA POINT HARBOR DEVELOPMENT | PRELIMINARY GEOTECHNICAL BORING PLAN | **Date** SEPTEMBER 2025 | **1** |
| APNS: 121-349-57, 682-165-01, 682-166-06, & 682-166-24 DANA POINT | | **Scale** AS SHOWN | |
| ORANGE COUNTY          CALIFORNIA | | **Drawn By** CR | |

LANGAN
Langan CA, Inc.
19575 Jamboree Road Suite 150
Irvine, CA 92612
T: 949.561.2000    F: 949.561.2001    www.langan.com

Filename: \\langan.com\data\IRV\data\700182901\Project Data\_Discipline\Geotechnical\CAD\GEOTECHNICAL FIGURES.dwg  Date: 9/16/2025  Time: 15:19  User: cranged  Style Table: Langan.stb  Layout: SP



**LANGAN**

Technical Excellence
Practical Experience
Client Responsiveness

### 2025 Hourly Rate Schedule for Professional Services and Applicable Equipment Fees

| Professional Designation | Hourly Billing Rate |
|---|---|
| Soils Technician, CA Prevailing Wage | $180 |
| Soils Technician, Non-CA Prevailing Wage | $155 |
| Administrative Professional | $155 |
| Drafter | $185 |
| Staff Level Professional | $185 |
| Senior Staff Level Professional | $205 |
| Project Level Professional | $240 |
| Senior Project Level Professional | $250 |
| Principal / Associate Level Professional | $360 |
| Senior / Managing Principal Level Professional | $395 |
| **Vehicle and Equipment Fees** | **Unit Rate** |
| Vehicle Daily Charge (per day) | $65 |
| Vehicle Mileage (per mile) | Current IRS Rate |
| Nuclear Density Gauge (per day) | $50 |

18575 Jamboree Road, Suite 150        Irvine, CA 92612        T: 949.561.9200        F: 949.561.9201        www.langan.com

New Jersey • New York • Connecticut • Massachusetts • Pennsylvania • Washington, DC • West Virginia • Ohio • Florida • Texas • Colorado • Arizona • Washington • California
Athens • Calgary • Dubai • London • Panama

# Exhibit 'G'

Docusign Envelope ID: BBA95372-6395-45E4-8509-E9B152F844B0

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 39 of 63


AIR **CRE**
contracts

<u>  1  </u>    **AMENDMENT TO**
**PURCHASE AND SALE AGREEMENT**

THIS AMENDMENT TO PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is made and entered into as of <u>  Septempter 17th,  </u> <u>2025  </u> , by and between <u>  Galaxy Holding or Assignee  </u> ("**Buyer**") and <u>  Sunstone Development LLC  </u> ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**").

WHEREAS, Buyer and Seller are parties to that certain Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate dated <u>  August 13,  </u> <u>2025  </u> ("**Agreement**") with respect to the property commonly known as (street address, city, state, zip): <u>  Exhibit "A" attached hereto.  </u> ("**Property**");

WHEREAS, the Agreement has not been previously amended except (if there are no exceptions write "NONE"): <u>  None  </u>

WHEREAS, the Parties have opened an escrow with <u>  Fidelity National Title  </u> ("**Escrow Holder**");

WHEREAS, the Parties now desire to amend the Agreement and their instructions to Escrow Holder ("**Escrow Instructions**");

NOW, THEREFORE, for Buyer's payment of ten dollars ($10) to Seller and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby amend the Agreement and the Escrow Instructions as follows (list changes below):

<u>1. The Buyers contingencies set forth in section 9.1 of the agreement are hereby extended</u>
<u>to September 29th, 2025.</u>

<u>2. Except as specifically amended by this Agreement Amendment, all other terms and</u>
<u>conditions of the Agreement and the Escrow Instructions remain unchanged and in full</u>
<u>force and effect.</u>

The defined terms of the Agreement shall have the same meaning in this Amendment. Signatures to this Amendment accomplished by means of electronic signature or similar technology shall be legal and binding. This Amendment may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall not be construed as if prepared by one of the Parties, but according to its fair meaning as a whole, as if both Parties had prepared it. Except as specifically amended by this Amendment, the Agreement and the Escrow Instructions shall remain unchanged and continue in full force and effect.

**ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKERS AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AMENDMENT. THE PARTIES ARE URGED TO SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AMENDMENT.**

EXECUTED as of the date first written above.

**By Seller:**
<u>  Sunstone Development LLC  </u>
Signed by:
By: _Blake Wettengel, CEO_
   708770C6C48C4A8...
Name Printed: <u>  Blake Wettengel, CEO  </u>
Title: _____
Email: <u>  Blake@crewcos.com  </u>

**By Buyer:**
<u>  Galaxy Holding or Assignee  </u>
Docusigned by:
By: _____
   C26D8D4134F430...
Name Printed: <u>  Raffi Cohen  </u>
Title: _____
Email: <u>  raffi@galaxyholding.com  </u>

DS
[initials]
INITIALS

Initial
BWW

INITIALS

© 2020 AIR CRE. All Rights Reserved.
ATPA-1.00, Revised 10-22-2020

Docusign Envelope ID: BBA95872-6295-45E4-8509-E9B152F844B0

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 40 of 63

By: _____

Name Printed: _____

Title: _____

Phone: _____

Fax: _____

Email: _____

Address: _____

Federal ID No.: _____

By: _____

Name Printed: _____

Title: _____

Phone: _____

Fax: _____

Email: _____

Address: _____

Federal ID No.: _____

**AIR CRE * https://www.aircre.com * 213-687-8777 * contracts@aircre.com**
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

INITIALS



INITIALS

© 2020 AIR CRE. All Rights Reserved.

ATPA-1.00, Revised 10-22-2020

# Exhibit 'H'

Docusign Envelope ID: B26932DB-2547-4862-97B5-7BCF0868125D

Case 8:25-bk-11049-SC    Doc 147-1    Filed 11/19/25    Entered 11/19/25 10:00:20    Desc
Exhibit Declaration of Alona Hassid    Page 42 of 63



<u>    2    </u>  **AMENDMENT TO**
**PURCHASE AND SALE AGREEMENT**

THIS AMENDMENT TO PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is made and entered into as of <u> September 29th,</u> <u>2025  </u> , by and between <u> Galaxy Holding or Assignee </u> ("**Buyer**") and <u> Sunstone Development LLC </u> ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**").

WHEREAS, Buyer and Seller are parties to that certain Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate dated <u> August 13th,</u> <u>2025 </u> ("**Agreement**") with respect to the property commonly known as (street address, city, state, zip): <u> Exhibit "A" attached hereto.</u> ("**Property**");

WHEREAS, the Agreement has not been previously amended except (if there are no exceptions write "NONE") . <u> None </u> .

WHEREAS, the Parties have opened an escrow with <u> Fidelity National Title </u> ("**Escrow Holder**");

WHEREAS, the Parties now desire to amend the Agreement and their instructions to Escrow Holder ("**Escrow Instructions**");

NOW, THEREFORE, for Buyer's payment of ten dollars ($10) to Seller and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby amend the Agreement and the Escrow Instructions as follows (list changes below):

<u> 1. The Buyers contingencies set forth in section 9.1 of the agreement are hereby </u> <u>extended to October 10th, 2025.</u>

<u>2.The Closing Date under the Agreement is hereby extended to October 13th, 2025.</u>

The defined terms of the Agreement shall have the same meaning in this Amendment. Signatures to this Amendment accomplished by means of electronic signature or similar technology shall be legal and binding. This Amendment may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Amendment shall not be construed as if prepared by one of the Parties, but according to its fair meaning as a whole, as if both Parties had prepared it. Except as specifically amended by this Amendment, the Agreement and the Escrow Instructions shall remain unchanged and continue in full force and effect.

**ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKERS AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AMENDMENT. THE PARTIES ARE URGED TO SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AMENDMENT.**

EXECUTED as of the date first written above.

**By Seller:**                                              **By Buyer:**

<u> Sunstone Development LLC </u>              <u> Galaxy Holding or Assignee </u>

By: _____          By: _____
Name Printed: <u>Blake Wettengel, CEO</u>        Name Printed: <u>Raffi Cohen</u>
Title: <u>Authorized Signatory</u>              Title: <u>PRESIDENT</u>
Phone: _____                          Phone: _____
Fax: _____                            Fax: _____
Email: <u>Blake@crewcos.com</u>               Email: <u>raffi@galaxyholding.com</u>

By: _____          By: _____
Name Printed: _____                   Name Printed: _____
Title: _____                          Title: _____
Phone: _____                          Phone: _____
Fax: _____                            Fax: _____
Email: _____                          Email: _____

Address: _____                        Address: _____
Federal ID No.: _____                 Federal ID No.: _____

**AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com**
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

_____                                    _____
INITIALS                                    INITIALS

Exhibit 'I'

From: **Paul J. Leeds** <pleeds@fsl.law>
Date: Thu, Oct 16, 2025 at 1:20 PM
Subject: Re: URGENT Re: ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA
To: Raffi Cohen <raffi@galaxyholding.com>
Cc: Blake Wettengel <Blake@crewcos.com>, Frank Muhlon <frankm@crewcos.com>,
Torres, Zac <Zac.Torres@fnf.com>, Shippy, Ryan <ryan.shippy@cbrealty.com>, Meredith
King <mking@fsl.law>, BRTeam <BRTeam@fnf.com>, Alona Hassid
<alonahassid@gmail.com>


Mr. Cohen-


Please see the attached correspondence regarding the failure of Galaxy Holdings to perform under
the contract dated August 14, 2025.


The Seller does <u>not</u> agree to the return of the deposit, and escrow is instructed to retain the deposit
until further order of the Bankruptcy Court.

R/ PJL



**Paul J. Leeds**
Admitted in CA and CO

📍 444 W C St, Ste 300
San Diego, CA 92101

📍 600 17th St. Ste 2800 S
Denver, CO 80202

🌐 FSL.law | 📞 619.872.2523



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

---

**From:** Raffi Cohen <raffi@galaxyholding.com>
**Date:** Friday, October 10, 2025 at 1:24 PM
**To:** BRTeam <BRTeam@fnf.com>, Alona Hassid <alonahassid@gmail.com>
**Cc:** Paul J. Leeds <pleeds@fsl.law>, Blake Wettengel <Blake@crewcos.com>, Frank Muhlon <frankm@crewcos.com>, Torres, Zac <Zac.Torres@fnf.com>, Shippy, Ryan <ryan.shippy@cbrealty.com>, Meredith King <mking@fsl.law>
**Subject:** URGENT Re: ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

This is my written notice of Buyer's disapproval of Buyer's contingency. Buyer DOES NOT approve contingency. Please refund the deposit.

**Raffi Cohen**
Founder, CEO, and President



8906 West Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Mobile: 310.261.7100
Office:  310.273.7233
raffi@galaxyholding.com
galaxyholding.com

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under the applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone (310)-273-7233 and return the communication at the email address given. Thank you.

---

**From:** BRTeam <BRTeam@fnf.com>
**Sent:** Friday, October 10, 2025 12:18:09 PM
**To:** Alona Hassid <alonahassid@gmail.com>
**Cc:** Paul J. Leeds <pleeds@fsl.law>; Raffi Cohen <raffi@galaxyholding.com>; Blake Wettengel <Blake@crewcos.com>; Frank Muhlon <frankm@crewcos.com>; Torres, Zac <Zac.Torres@fnf.com>; Shippy, Ryan <ryan.shippy@cbrealty.com>; Meredith King <mking@fsl.law>
**Subject:** RE: URGENT Re: ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

Hi Alona,

I will need written instruction confirming this from the seller to proceed. I can't take your word for it that contradicts prior instruction.

Thank you,



**ANTHONY LOCH**
Commercial Escrow Assistant to Brenna Ryan
Fidelity National Title, National Commercial Services

**949.623.3038 (D) • Anthony.Loch@fnf.com**
4400 MacArthur Blvd. Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn

Team:
Brenna Ryan • Silvia Santiago
BRTeam@fnf.com (team email)



**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Friday, October 10, 2025 12:05 PM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** Paul J. Leeds <pleeds@fsl.law>; Raffi Cohen <Raffi@galaxyholding.com>; Blake Wettengel
<Blake@crewcos.com>; Frank Muhlon <frankm@crewcos.com>; Torres, Zac
<Zac.Torres@fnf.com>; Shippy, Ryan <ryan.shippy@cbrealty.com>; Meredith King
<mking@fsl.law>
**Subject:** Re: URGENT Re: ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

Hi,

That is NOT accurate.

Raffi said he spoke with Paul and Ryan **after** Paul sent that email and confirmed they
are releasing the funds today.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally
privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the
reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email
immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Fri, Oct 10, 2025 at 12:02 PM BRTeam <BRTeam@fnf.com> wrote:

Hi Alona,

The email from Paul, as shown below your response, states that Escrow is not to release the deposit until further order from the Bankruptcy court.

Thank you,



**ANTHONY LOCH**
Commercial Escrow Assistant to Brenna Ryan
Fidelity National Title, National Commercial Services

949.623.3038 (D) • Anthony.Loch@fnf.com
4400 MacArthur Blvd. Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn

Team:
Brenna Ryan • Silvia Santiago
BRTeam@fnf.com (team email)



**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Friday, October 10, 2025 11:58 AM
**To:** Paul J. Leeds <pleeds@fsl.law>; Raffi Cohen <Raffi@galaxyholding.com>
**Cc:** BRTeam <BRTeam@fnf.com>; Blake Wettengel <Blake@crewcos.com>; Frank Muhlon <frankm@crewcos.com>; Torres, Zac <Zac.Torres@fnf.com>; Shippy, Ryan <ryan.shippy@cbrealty.com>; Meredith King <mking@fsl.law>
**Subject:** Re: URGENT Re: ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

Hi Paul,

Raffi said he just spoke to you and Ryan on the phone just now and **you confirmed that you are returning the deposit funds.**

I will wait to see the wire in my account.

Escrow - call me to confirm wire instructions 310.849.1409.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Fri, Oct 10, 2025 at 11:41 AM Paul J. Leeds <pleeds@fsl.law> wrote:

> Good Morning Ms. Hassad, and Fidelity representatives-
>
> I represent the seller, Sunstone Developments LLC, which is the debtor-in-possession in the case of *In re Sunstone Development, LLC,* Case No. 8:25-bk-11049-SC pending in the U.S. Bankruptcy Court for the Central District of California, and party to the subject escrow.  I was not aware until this morning that Ms. Hassad represented Galaxy Holdings with regard to this transaction.
>
> I have attached the order entered by the BANKRUPTCY Court approving the sale, which was entered on September 23, 2025.  On October 2, we filed the attached motion for an order extending the date for sale to accommodate Galaxy Holdings' request for additional time to

complete its due diligence.  We have also applied for an order shortening time to set the matter for hearing.  <u>The Court has not yet ruled on these requests.</u>

The purchase money deposit held in this escrow is property of the bankruptcy estate, and subject to the exclusive jurisdiction of the Bankruptcy Court.  Sunstone Development LLC does not authorize or consent to the release of the deposit, and at this time, there is no court order authorizing that release.

The Order Approving the Sale states at Paragraph 9:  "Should Galaxy not timely complete its purchase of the Dana Point Parcels pursuant to the terms of the Purchase Agreement, its deposit shall be forfeited."

<u>Escrow is required to comply with the Court's orders, and may not release the deposit without further order from the Bankruptcy Court.</u>

I understand that Sunstone's broker, Ryan Shippy of Coldwell Banker, has discussed terms for a consensual extension of the due diligence period with Galaxy's principal, Mr. Cohen, which must be (1) agreed by the secured lender, Oakhurst, and (2) approved by the Bankruptcy Court. We are hopeful that agreement will be reached and that the Court will approve it. We are further willing to extend the status quo regarding the remaining contingencies until an agreement is reached and the Court has issued the required orders.

However, until such agreement is reached, and Court approval is obtained, <u>escrow is not authorized to release the purchase money deposit.</u>  Please contact me immediately to discuss; my cell number is (760) 889-2072.  R / PJL



**Paul J. Leeds**
Admitted in CA and CO

📍 444 W C St, Ste 300
San Diego, CA 92101
📍 600 17th St. Ste 2800 S
Denver, CO 80202
🌐 FSL.law | 📞 619.872.2523



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you

may not copy this message or disclose its contents to anyone.

---

**From:** Blake Wettengel <Blake@crewcos.com>
**Date:** Friday, October 10, 2025 at 11:02 AM
**To:** Paul J. Leeds <pleeds@fsl.law>, Frank Muhlon <frankm@crewcos.com>
**Subject:** FW: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

…



**Blake Wettengel**
CHIEF EXECUTIVE OFFICER
(877) 827-6272
20 Enterprise Suite 400 Aliso Viejo, CA 92656

  

---

**From:** Alona Hassid <alonahassid@gmail.com>
**Date:** Friday, October 10, 2025 at 10:56 AM
**To:** "Shippy, Ryan" <ryan.shippy@cbrealty.com>
**Cc:** BRTeam <BRTeam@fnf.com>, Blake Wettengel <Blake@crewcos.com>, Mason Lareuse <Mason@galaxyholding.com>, Raffi Cohen <raffi@galaxyholding.com>, "Wright, Ron L" <ron.wright@cbrealty.com>, "Torres, Zac" <Zac.Torres@fnf.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

Escrow,

Do you have our Wire instructions for deposit return? Return to same account wire was received from, please confirm info prior to wiring.

-----

Regards,

Alona Hassid
1340 E. 6th Street #200
Los Angeles, CA 90021
Tel. (213) 688.9190
Email: AlonaHassid@gmail.com


Confidentiality Notice: This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.


On Fri, Oct 10, 2025, 10:09 AM Alona Hassid <alonahassid@gmail.com> wrote:

Hi Ryan,


What proposal?

I want to be clear that *there is no waiver of contingency and we would like to receive the deposit back.*


-----


Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Fri, Oct 10, 2025 at 10:07 AM Shippy, Ryan <ryan.shippy@cbrealty.com> wrote:

> Hi Alona,
>
> I just spoke with Raffi; he has confirmed a proposal we are working on. Please refer to him if you have any questions, thank you!
>
> Get Outlook for iOS
>
> ---
>
> **From:** Alona Hassid <alonahassid@gmail.com>
> **Sent:** Friday, October 10, 2025 9:36:28 AM
> **To:** Shippy, Ryan <ryan.shippy@cbrealty.com>
> **Cc:** BRTeam <BRTeam@fnf.com>; blake@crewcos.com <blake@crewcos.com>; Mason Lareuse <Mason@galaxyholding.com>; Raffi Cohen <raffi@galaxyholding.com>; Wright, Ron L <ron.wright@cbrealty.com>; Torres, Zac <Zac.Torres@fnf.com>
> **Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA
>
> Hi,
>
> To be clear, we ARE NOT releasing or agreeing to 100K for 3 a month extension.
>
> WE DO NOT WAIVE ANY CONTINGENCY.
>
> Please refund the deposit.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Thu, Oct 9, 2025 at 5:02 PM Shippy, Ryan <ryan.shippy@cbrealty.com> wrote:

Hi All,

Contingency has not lapsed yet, here is amendment 2 for record. We are working through details on extension. Should have more information tomorrow, thank you!

Ryan Shippy

Sales Associate

Coldwell Banker Commercial

M: (949) 690-8202

840 Newport Center Dr Ste 100 | Newport Beach, CA, 92660

ryan.shippy@cbrealty.com

CalRE: 02222818

**COLDWELL BANKER
COMMERCIAL**

---

**From:** Alona Hassid <alonahassid@gmail.com>
**Date:** Thursday, October 9, 2025 at 11:02 AM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** blake@crewcos.com <blake@crewcos.com>, Mason Lareuse <Mason@galaxyholding.com>, Raffi Cohen <raffi@galaxyholding.com>, Wright, Ron L <ron.wright@cbrealty.com>, Torres, Zac <Zac.Torres@fnf.com>, Shippy, Ryan <ryan.shippy@cbrealty.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

Hi ALL -


Please note, if an extension of DD is not granted today, we would like to cancel this escrow and have the deposit funds returned.

**We are NOT approving contingency removal.**


-----


Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Mon, Sep 29, 2025 at 3:47 PM BRTeam <BRTeam@fnf.com> wrote:

Received. ..thank you,



**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D)** **Brenna.Ryan@fnf.com**
4400 MacArthur Blvd., Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn



**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Monday, September 29, 2025 3:08 PM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** blake@crewcos.com; Mason Lareuse <Mason@galaxyholding.com>; Raffi
Cohen <raffi@galaxyholding.com>; ron.wright@cbrealty.com; Torres, Zac
<Zac.Torres@fnf.com>; Shippy, Ryan <ryan.shippy@cbrealty.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point,
CA

Hi,

Please see attached due diligence extension to October 10, 2025.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Fri, Sep 26, 2025 at 1:14 PM BRTeam <BRTeam@fnf.com> wrote:

Alona,

I am adding all parties to this email thread so that everyone is in the loop.

Thank you,



**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D) Brenna.Ryan@fnf.com**
4400 MacArthur Blvd., Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn

 

---

**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Friday, September 26, 2025 10:09 AM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** Mason Lareuse <Mason@galaxyholding.com>; Raffi Cohen <raffi@galaxyholding.com>; Torres, Zac <Zac.Torres@fnf.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana

Point, CA

Escrow and Team -

Please note, if by 9/29/2025 (end of DD period) we don't receive an additional DD extension, we are hereby cancelling this escrow and instructing escrow to return the funds to the same account it was sent from - Western Imperial 2000 LLC.  Please let me know if you have the account details or need me to resend?

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Thu, Sep 18, 2025 at 10:37 AM BRTeam <BRTeam@fnf.com> wrote:

> Received.
>
> Thank you,

**ANTHONY LOCH**
Commercial Escrow Assistant to Brenna Ryan
Fidelity National Title, National Commercial Services

**949.623.3038 (D) • Anthony.Loch@fnf.com**
4400 MacArthur Blvd. Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn

Team:
Brenna Ryan • Silvia Santiago
BRTeam@fnf.com (team email)



**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Thursday, September 18, 2025 9:29 AM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** Mason Lareuse <Mason@galaxyholding.com>; Raffi Cohen <raffi@galaxyholding.com>; Torres, Zac <Zac.Torres@fnf.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana Point, CA

See attached extension.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender

through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited.

On Wed, Sep 17, 2025 at 11:19 AM BRTeam <BRTeam@fnf.com> wrote:

Funds remain in escrow.  You will need to get a mutually executed
amendment extending the terms of the agreement to us as soon as
possible.

Thanks,



**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D)** Brenna.Ryan@fnf.com
4400 MacArthur Blvd., Suite 200 • Newport Beach, CA 92660
Download my vCard | Visit Our Website | Connect on LinkedIn



**From:** Alona Hassid <alonahassid@gmail.com>
**Sent:** Wednesday, September 17, 2025 10:26 AM
**To:** BRTeam <BRTeam@fnf.com>
**Cc:** Mason Lareuse <Mason@galaxyholding.com>; Raffi Cohen
<raffi@galaxyholding.com>; Torres, Zac <Zac.Torres@fnf.com>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels, Dana
Point, CA

We are in talks with Seller/Broker for more time.

*In the meantime - this is to confirm that the deposit made shall remain*

*FULLY refundable and that Buyer does not waive any contingencies.*

If the agreement requires anything else be put in writing regarding the deposit remaining refundable - let me know so we can get it done ASAP.

-----

Regards,

Alona Hassid

1340 E. 6th Street #200

Los Angeles, CA 90021

Tel. (213) 688.9190

Email: AlonaHassid@gmail.com

**Confidentiality Notice:** This E-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please contact the sender through the above captioned telephone numbers or email immediately. You are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

On Tue, Sep 16, 2025 at 9:46 AM BRTeam <BRTeam@fnf.com> wrote:

I'm not sure, however, we received a request for extension on 8/28 to extend the due diligence to Thursday.  If you need more time, than you need to reach out to the seller and their broker and request an extension.

Thanks,

**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D)** <u>Brenna.Ryan@fnf.com</u>
4400 MacArthur Blvd., Suite 200 • Newport Beach, CA 92660
<u>Download my vCard</u> | <u>Visit Our Website</u> | <u>Connect on LinkedIn</u>



---

**From:** Alona Hassid <<u>alonahassid@gmail.com</u>>
**Sent:** Tuesday, September 16, 2025 9:25 AM
**To:** BRTeam <<u>BRTeam@fnf.com</u>>
**Cc:** Mason Lareuse <<u>Mason@galaxyholding.com</u>>; Raffi Cohen
<<u>raffi@galaxyholding.com</u>>; Torres, Zac <<u>Zac.Torres@fnf.com</u>>
**Subject:** Re: NEW ESCROW: FBDO-2507753 - Doheny Parcels,
Dana Point, CA

Who is drawing up the amendment?

-----

Regards,

Alona Hassid
1340 E. 6th Street #200
Los Angeles, CA 90021
Tel. (213) 688.9190
Email: <u>AlonaHassid@gmail.com</u>

Confidentiality Notice: This E-mail is covered by the Electronic
Communications Privacy Act (18 U.S.C. §§ 2510-2521) and is legally
privileged. This information is confidential information and is intended
only for the use of the individual or entity named above. If the reader
of this message is not the intended recipient, please contact the sender
through the above captioned telephone numbers or email immediately.
You are hereby notified that any dissemination, distribution or copying
of this communication is strictly prohibited.

On Tue, Sep 16, 2025, 9:24 AM BRTeam <<u>BRTeam@fnf.com</u>>
wrote:

Alona,

We are in receipt of your message, however, I was waiting on the amendment to provide direction.

Thanks,

**BRENNA RYAN**
AVP, Sr. Commercial Escrow Officer
Fidelity National Title, National Commercial Services

**949.221.4763 (D) Brenna.Ryan@fnf.com**

---

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.