**DECLARATION OF DANIEL ZOHAR**

I, DANIEL ZOHAR, declare as follows:

1. I am an attorney with the Zohar Law Firm, P.C., counsel for to G & H Equities, LLC ("G & H") in the above-captioned matter. I am licensed to practice before all courts of the State of California and various federal courts. I submit this declaration in support of G & H's motion for the release of its $450,000 deposit (the "Deposit") in connection with the sale of SUNSTONE DEVELOPMENT, LLC's (the "Debtor") real property located in Dana Point, California (the "Property"). The following facts are within my personal knowledge and if called as a witness to testify, I could and would competently testify to their accuracy.

2. On October 22, 2025, I informed the Debtor via a letter to its counsel that absent the immediate refund of the Deposit, G & H would seek court intervention both for the return of its Deposit and for reimbursement of attorneys' fees and costs. Attached hereto as Exhibit 'A' is a true and correct copy of the letter that I sent to the Debtor.

3. Thereafter, I made several follow up requests for the return of the Deposit, including on October 27, November 4, and November 5, 2025, but I was ultimately ignored. The last time that I received any communication from the Debtor's counsel was on October 31, 2025.

4. Through the Motion, G & H requests reimbursement in the sum of $9,515 for reasonable attorneys' fees and costs incurred to recover the Deposit. That amount was calculated based on my standard hourly rate of $700.00 per hour and the time I have expended on this matter, which to date has been 7.7 hours, as well as the time spent by Avi Muhtar, as described below. Specifically, this time includes efforts to review the file and the papers filed with the court, to draft a detailed correspondence to Debtor's counsel seeking a return of the $450,000 deposit, speaking with and emailing Debtor's counsel, and then drafting this motion, along with the assistance of Avi Muhtar, a lawyer experienced with bankruptcy proceedings, who's hourly rate is $550.00. Mr. Muhtar has spent 7.5 hours reviewing the pertinent exhibits and helping me draft this motion.

5. In sum, the attorney time spent on this matter to date is:

a. Daniel Zohar - 7.7 hours at $700/hour = $5,390.

b. Avi Muhtar – 7.5 hours at $550/hour = $4,125

c. Total fees to date are $9,515 ($5,390 + $4,125).

6. I have been practicing law since 1993. I am a graduate of Duke University and UCLA School of Law. I am a member of both the State Bar of California (active) and the Florida Bar (inactive), and have been admitted pro hac vice in New Jersey, Delaware, Utah, and Arizona. I am admitted to the U.S. District Court, Middle District of Florida; U.S. District Court, Central, Eastern & Southern Districts of California, the U.S. Court of Appeals, Ninth Circuit, and the United States Supreme Court. Prior to starting my own firm in 1998, I was an attorney at Paul, Hastings, Janofsky and Walker. I am currently a member of the American Board of Trial Advocates (ABOTA) and have served on the boards of both the Association of Business Trial Lawyers (ABTL), Los Angeles chapter, and the Consumer Attorneys of Los Angeles (CAALA). I served on the Los Angeles Superior Court Alternative Dispute Resolution committee when it was still in existence. I am rated AV by Martindale-Hubbell and for twenty years have been chosen by my peers as a Southern California Super Lawyer. I am also currently appointed, and have served every year since 2013, as a lecturer at the UCLA School of Law.

7. Mr. Muhtar has been practicing law since 2008 and has extensive experience handling matters in bankruptcy court. He is a graduate of UCLA and the University of Southern California, Gould School of Law. Mr. Muhtar is admitted to practice in all U.S. Bankruptcy Courts in the State of California, and in the U.S. District Court for the Central District of California. Prior to starting his own firm, Mr. Muhtar was an attorney at Stutman, Treister & Glatt, P.C. and at SulmeyerKupetz, P.C.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 18th day of November, 2025, in Los Angeles, California.

Daniel Zohar

# Exhibit 'A'

Z

ZOHAR LAW FIRM, P.C.

10877 Wilshire Boulevard, Suite 300C
Los Angeles, California 90024
(213) 689-1300
Fax (213) 689-1305
www.zoharlawfirm.com

October 22, 2025

**Via E-Mail** (pleeds@fsl.law)

Paul Leeds
Franklin Soto Leeds
4 W C St, Ste 300
San Diego, CA 92101

Re: ***Cancellation of Purchase Agreement and Return of $450,000 Deposit: FBDO-2507753***

Dear Paul:

Thank you once again for speaking with me last week. As we discussed, I represent G & H Equities, LLC ("G & H"), the assignee of Galaxy Holdings, LLC. Attached for your reference is the Assignment of Agreement Amendment countersigned by Sunstone Development, LLC on September 4, 2025.

I am writing you with regard to my client's timely cancellation of the "Offer, Agreement, and Escrow Instructions for Purchase of Real Estate" ("Purchase Agreement") with Chapter 11 Debtor-in-Possession Sunstone Development, LLC ("Sunstone") dated August 13, 2025. I understand from our conversation that you were hopeful that the deal could still be salvaged. It cannot. G & H has cancelled the Purchase Agreement, and the buyer's $450,000 deposit must be returned forthwith.

As we discussed previously, G & H gave timely notice of its refusal to waive the remaining contingencies, including the soil inspection. [See, e.g. emails from Alona Hassid on October 9 and 10, 2025 ("I want to be clear that ***there is no waiver of contingency and we would like to receive the deposit back.***") and email from Raffi Cohen, dated October 10, 2025 ("This is my written notice of Buyer's disapproval of Buyer's contingency. Buyer DOES NOT approve contingency. Please refund the deposit")].

Section 4.1 of the Purchase Agreement provides that "Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer." Section 9 of the Purchase Agreement, entitled "Contingencies to Closing," states at 9.1 that "The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies," including physical inspection, hazardous substance conditions report, soil inspection, and government approvals, among others. There is no dispute that, at a minimum, the deadline to waive the soil inspection contingency (and in our opinion, all contingencies

under Section 9.1) was extended until and including October 10, 2025. (See Amendment to Purchase and Sale Agreement dated September 29, 2025, attached as Exhibit 6 to your October 2, 2025 declaration filed with the court; and Leeds Decl., ¶ 21: "…on September 29, to avoid a loss of the Sale, Debtor's principal executed an (sic) second "Amendment to Purchase and Sale Agreement" extending the time period for Galaxy to waive existing contingencies to October 10, 2025."

Because the buyer and the buyer's assignee gave written notice on or before October 10, 2025, that buyer was not waiving any of the Section 9.1 contingencies, at that moment, the Purchase Agreement was terminated, and the deposit was required to be returned.

We understand that because of the bankruptcy proceedings, bankruptcy court approval may be necessary for escrow to release the funds. But we expect that you will immediately seek approval for the release of the funds to G & H. Should your client refuse to do so, G & H will have no choice but to file its own request with the Court. If it is forced to do so, in light of the clear governing legal authority, G & H will be seeking the recovery of its attorneys' fees pursuant to Section 16 of the Agreement.[1]

Sunstone does not dispute that it received timely notice of Galaxy's refusal waive the soil report contingency. Rather, *without evidence,* you suggest that Galaxy was not acting in good faith. But as set forth in your October 2, 2025 declaration, Sunstone was notified that the buyer's geotechnical consultant, Langan, asserted in a September 16, 2025 report that it needed an additional 56 days to perform certain geotechnical studies and soil reports. While Sunstone granted a short extension for less than the eight weeks required by Langan, Sunstone's lender refused to permit Sunstone to grant the full eight week extension without first trying to extract a further payment of $631,060 from the buyer, which the buyer refused to provide.

Sunstone and its lender, Oakhurst, knew that buyer and its geotechnical engineer would need an additional eight weeks, but refused to extend the waiver deadline. The fact that the buyer subsequently gave timely notice that it was not waiving the soil inspection contingency (or any of the Section 9.1 contingencies) should have come as no surprise.

Any efforts on your part to recharacterize how the events transpired is not well taken, as the law is clearly on G & H's side. Apart from the Purchase Agreement itself, which controls, and which language I quoted above, the law contemplates giving buyers adequate time to perform due diligence and investigate a property before committing to a purchase. The courts have regularly upheld provisions that condition the closing of a land purchase on the buyer's approval of reports, such as termite, soils, engineering, and title reports. See Miller & Starr § 1:106. [Duty to make good-faith attempt to satisfy a condition—Condition based on approval or satisfaction (4th ed.)] Indeed, in *Larwin-*

---

[1] In relevant part, Section 16 of the standard AIR Agreement provides that if any party brings an action or proceeding involving the Property, "the Prevailing Party shall be entitled to reasonable attorneys' fees and costs. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment…The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred."

*Southern California, Inc. v JGB Investment Co.,* the Court of Appeal held that contracts containing satisfaction clauses are enforceable even when they grant a party the right to approve or disapprove matters in their sole judgment and discretion. *Larwin-Southern California, Inc. v. JGB Investment Co., 101 Cal.App.3d 626, 640 (1979).* The *Larwin* Court specifically addressed the use of broad discretionary language, stating that despite the provision that plaintiff had “sole judgment and discretion” in deciding whether to exercise its approval or disapproval, it was required to do so only within the parameters of the duty of good faith. *Id.*

As a fallback, then, you have suggested (without evidentiary support) that the buyer did not act in good faith. The California Supreme Court has noted, however, that “the *implied* covenant does not trump an agreement's *express* language…The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.” *Steiner v. Thexton* (2010) 48 Cal.4th 411, 419–420. This can include subjective satisfaction criteria such as a soil report, or in some cases, a subdivision map. *See Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 160.

Here, the buyer had an express right not to waive the contingencies listed in Section 9.1. Further, buyer’s geotechnical consultant, Langan, stated in their report dated September 16, 2025, that they required an additional eight weeks to perform the soil study. You cannot credibly argue that the buyer was supposed to ignore the advice of its expert consultant and waive the soil report contingency without first having the studies completed. Any reasonable buyer would have asked for more time in order to complete the soil study, and if not given an extension, would have chosen not to waive the contingencies, as was done here.

I understand that Sunstone would rather not have its lender foreclose on the property, but that was the lender’s choice. I understand that Sunstone would rather have the buyer waive all contingencies without completing a soil study, but that was not the buyer’s choice. Under the Purchase Agreement, therefore, the transaction was cancelled. The $450,000 deposit must be returned forthwith.

I would urge you to advise the bankruptcy court, if necessary, that the deposit must be returned, or if not necessary, to confirm with the escrow holder that the deposit funds must be released immediately.

If you wish to discuss this further, please call me at your convenience. Please keep in mind, though, that the longer this takes to resolve, the more my client’s fees will accrue, which fees will be recoverable against the seller.

Very truly yours,

/s/

Daniel Y. Zohar, Esq.

**for ZOHAR LAW FIRM, P.C.**

CALIFORNIA ASSOCIATION OF REALTORS®

# ASSIGNMENT OF AGREEMENT AMENDMENT
(C.A.R. Form AOAA, Revised 6/24)




The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other ____________, dated *08/13/2025* ("Agreement"), on property known as *34311 PACIFIC COAST HWY, Dana Point, California 92629* ("Property"), between *Galaxy Holding or Assignee* ("Buyer") and *Sunstone Development LLC* ("Seller"). Buyer and Seller are referred to as the "Parties."

In consideration, of the covenants contained herein, Buyer hereby assigns to assignee and assignee accepts the assignment, subject to Seller's consent if required by the Agreement, of all or a partial interest of Buyer's right, title, and interest under the Agreement, including without limitation, the right, title, and interest in any deposit or down payment upon the following terms and conditions:

**1. PARTIAL OR TOTAL ASSIGNMENT:**

A. ☐ **PARTIAL ASSIGNMENT (Adding a buyer):** Buyer is adding the Assignee(s) named below to the Agreement and granting to such Assignee(s) a partial interest in the Agreement.

OR B. ☒ **TOTAL ASSIGNMENT (New buyer(s) replaces all original Buyers):** Buyer is assigning all of Buyer's interest in the Agreement to the Assignee(s) named below.

OR C. ☐ **OTHER ASSIGNMENT (Replacing a Buyer and at least one original Buyer remaining; or Deleting a Buyer):** ____________ (buyer(s) being removed) is assigning all of that buyer(s) interest in the Agreement to the new or remaining buyer(s) (Assignee(s)) named below.

D. **ASSIGNEE(S) NAMES:** *G&H Equities LLC*, ____________.

E. ☐ Assignee is Buyer's own trust or a wholly-owned entity of Buyer.

**2. PRIOR DOCUMENTS**: Assignee shall initial the first page of each document and Deliver to Seller all of the transaction documents previously approved by Buyer including, but not limited to, all contract documents, inspection reports, pamphlets, advisories, and disclosures ("Prior Documents") within the time specified below. Unless Otherwise Agreed, Assignee acknowledges that all time frames in the Agreement remain the same and no additional time shall be provided for any matter including, but not limited to, investigation, review of documents, or Close Of Escrow.

A. **DELIVERY OF PRIOR DOCUMENTS:**

(1) **Prior Documents already delivered to Assignee:** Assignee acknowledges that Buyer has already provided Assignee all Prior Documents.

OR (2) ☐ **Prior Documents not yet delivered to Assignee:** Seller shall Deliver to Buyer and Assignee a seller-signed copy of this Assignment of Agreement Addendum ("Assignment"). Upon receipt of the seller-signed Assignment, Buyer shall immediately Deliver to Assignee all Prior Documents.

B. **PREQUALIFICATION OR PREAPPROVAL OF ASSIGNEES:** Assignee has been prequalified or preapproved by Buyer's lender as per the Agreement and a copy is attached. This requirement applies even if **1E** is checked.

C. **TIME TO RETURN ASSIGNEE-INITIALED PRIOR DOCUMENTS:**

(1) Initialed copies of all Prior Documents are attached to this Assignment.

OR (2) ☐ Assignee shall Deliver initialed copies of all Prior Documents to Seller within **3 (or ____) Days** after Seller Delivers to Assignee a Signed Copy of this Assignment.

(3) If **1E** is checked, Delivery and Return of Prior Documents is not required because Assignee is Buyer's own trust or a wholly-owned entity of Buyer.

D. **EFFECT OF FAILURE TO RETURN OR ATTACH DOCUMENTS:** Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Assignment and the Assignment shall have no further force and effect:

(1) **Prior Documents:** If Assignee does not Deliver to Seller all Prior Documents within the time specified in **2C**.

(2) **Prequalification or preapproval:** If Assignee does not attach same prequalification or preapproval from Buyer's lender as required by Buyer.

**3. CONSIDERATION FOR ASSIGNMENT:**

A. Buyer has not received and will not receive any monetary consideration from Assignee for this Assignment.

OR B. ☐ Buyer has received or will receive consideration from Assignee in the amount of $________ (or ☐ ________).

4. Assignee represents for the benefit of Seller that Assignee ratifies and approves as Assignee's own acts all prior approvals and acts of Buyer pursuant to the Agreement up to and including the date of this Assignment.

5. Assignee assumes and agrees to perform and observe all of the obligations and covenants of Buyer in the Agreement to be performed after the date of this Assignment.

6. Buyer acknowledges and agrees that, notwithstanding Seller's agreement to this Assignment, Buyer is not released from any obligations or covenants under the Agreement.

7. Other terms: ____________

8. Without releasing Buyer from any obligations or covenants under the Agreement and preserving all rights and remedies under the Agreement, in consideration of the covenants contained herein, Seller consents to the foregoing Assignment.

© 2024, California Association of REALTORS®, Inc.








Coldwell Banker Realty - Newport Beach, 840 Newport Center Drive, Suite 100 Newport Beach CA 92660 Phone: (949)690-8202 Fax: (949) 644-1690 Dana Parcels
Ryan Shippy Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

9. The parties acknowledge and agree that they have been advised to review this Assignment with a qualified California real estate attorney and/or accountant prior to signing this Assignment. The Brokers and agents make no representation as to the propriety, adequacy, legality or tax consequences of this Assignment.

**By signing below, Buyer assigns the Agreement to Assignee, and Assignee accepts the assignment from Buyer, and Buyer and Assignee, acknowledge that each has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

DocuSigned by: C26DBB4C978B4BA... — 9/4/2025 | 10:48:45 AM PDT

Buyer *Galaxy Holding or Assignee* Date

Buyer ______________________ Date ______________

☐ **ENTITY ASSIGNEE: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) **Non-Individual (entity) Assignee:** One or more Assignees is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): ______________________________________.

(3) **Contractual Identity of Assignee:** For purposes of this Agreement, when the name described below is used it shall be deemed to be the full entity name.

(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**

(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to Seller and Escrow Holder, within **3 Days** of signing, evidence of authority to act in that capacity.

(B) The name(s) of the Legally Authorized Signer(s) is: ______________, ______________ .

**ASSIGNEE SIGNATURE(S):**

(Signature) By, DocuSigned by: C26DBB4C978B4BA... Date: 9/4/2025 | 10:48:45 AM PDT

Printed name of ASSIGNEE: ***G&H Equities LLC***

☐ Printed Name of Legally Authorized Signer: Raffi Cohen Title, if applicable: ______________

(Signature) By, ______________________ Date: ______________

Printed name of ASSIGNEE: ______________________

☐ Printed Name of Legally Authorized Signer: ______________ Title, if applicable: ______________

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA)

**By signing below, Seller consents to the assignment and acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

Signed by: Blake Wettengel, CEO 7097708232D743E... — 9/4/2025 | 10:58:25 AM PDT

Seller ***Sunstone Development LLC*** Date

Seller ______________________ Date ______________

| ASSIGNMENT **NOT** ACCEPTED: ________/________. This assignment was **NOT** accepted by Seller on ____________ (date).<br>Seller Initials<br>**Seller's right to disapprove an assignment, if applicable, is established in the Agreement.** |
|---|

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

